UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

COZEN O'CONNOR, P.C.,

    Plaintiff,

       v.

JENNIFER J. TOBITS and
DAVID M. FARLEY and
JOAN F. FARLEY, h/w,

    Defendants

Case Number 2:11-cv-00045

Judge:  C. Darnell Jones, II

**JENNIFER TOBITS'S OPPOSITION TO PLAINTIFF COZEN O'CONNOR, P.C.'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I.  INTRODUCTION ...............................................................................................1

II.  STATEMENT OF RELEVANT FACTS ...........................................................3

III.  ARGUMENT.......................................................................................................4

   A.  DOMA Does Not Prevent a Private Employer from Defining the Term "Spouse" in its ERISA Plan to Include a Same-Sex Spouse .....................................................4

   B.  The Plan Language Is Unambiguous ......................................................................8

   C.  Ms. Tobits Has Properly Alleged That Cozen Breached Its Fiduciary Duties by Failing to Communicate That a Same-Sex Spouse May Not Be Considered a "Spouse" Under the Plan ..........................................................................................10

      i.  The SPD Did Not Inform the Average Plan Participant That a Same-Sex Spouse May Not Be Covered by the Plan...................................................11

      ii.  Ms. Tobits Has Plausibly Alleged That Cozen Knew of Ms. Farley's Marriage and Breached Its Resulting Fiduciary Duty to Communicate to Ms. Farley That Her Spouse Is Not Covered Under the Plan ....................14

   D.  Ms. Tobits Has Standing to Assert the Breach of Fiduciary Duty Claim..............17

IV.  CONCLUSION..................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Adams v. Freedom Forge Corp.*,
   204 F.3d 475 (3d Cir. 2000) ................................................................................ 15

*Alberti v. Ron Lewis Auto. Group*,
   2006 WL 2773254, at *6 (W.D. Pa. Sept. 12, 2006) ............................................ 15

*Baldwin v. University of Pittsburgh Medical Center*,
   636 F.3d 69 (3d Cir. 2011) .............................................................................. 8, 18

*Berlin v. Michigan Bell Tel. Co.*,
   858 F.2d 1154 (3d Cir. 1988) ............................................................................. 18

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*,
   12 F.3d 1292 (3d Cir. 1993) ............................................................................... 14

*Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research Found.*,
   334 F.3d 365 (3d Cir. 2003) ............................................................................... 12

*CIGNA Corp. v. Amara*,
   131 S.Ct. 1866 (2011) ........................................................................... 10, 13, 14

*Diaz v. Prudential Life Ins. Co.*,
   499 F.3d 640 (7th Cir. 2007) ................................................................................ 9

*Edmondson v. Lincoln Nat. Life Ins. Co.*,
   777 F. Supp. 2d 869 (E.D. Pa. 2011) .............................................................. 18, 19

*Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*,
   93 F.3d 1171 (3d Cir. 1996) ............................................................................... 14

*Gould Elecs. Inc. v. United States*,
   220 F.3d 169 (3d Cir. 2000) ............................................................................... 19

*Great Am. Ins. Co. v. Norwin Sch. Dist.*,
   544 F.3d 229 (3d Cir. 2008) ............................................................................... 10

*Hardester v. Lincoln Nat. Life Ins. Co.*,
   33 F.3d 330 (4th Cir. 1994) .................................................................................. 9

*Harte v. Bethlehem Steel Corp.*,
   214 F.3d 446 (3d Cir. 2000) .......................................................................... 14, 15

*Harzewski v. Guidant Corp.*,
    489 F.3d 799 (7th Cir. 2007) ................................................................. 19

*Hirt v. The Equitable Ret. Plan for Employees, Managers, and Agents*,
    41 F. Supp. 2d 516 (S.D.N.Y. 2006) ....................................................... 12

*In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*,
    97 F.3d 710 (3d Cir. 1996) ...................................................................... 8

*In re Unisys Corp. Retiree Med. Ben. ERISA Litigation [Unisys II]*,
    57 F.3d 1255 (3d Cir. 1995) ................................................................... 15

*Jordan v. Federal Express Corp.*,
    116 F.3d 1005 (3d Cir. 1997) ........................................................... 14, 16

*Leuthner v. Blue Cross & Blue Shield*,
    454 F.3d 120 (3d Cir. 2006) ............................................................. 18, 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ 19

*Mele v. Fed. Reserve Bank*,
    359 F.3d 251 (3d Cir. 2004) ........................................................... 3, 4, 16

*Miller v. Rite Aid Corp.*,
    334 F.3d 335 (3d Cir. 2003) ................................................................... 18

*Rovira v. AT&T*,
    817 F. Supp. 1062 (S.D.N.Y. 1993) ........................................................ 9

*Saltarelli v. Bob Baker Group Med. Trust*,
    35 F.3d 382 (9th Cir. 1994) .................................................................... 12

*Veilleux v. Atochem N. Am., Inc.*,
    929 F.2d 74 (2d Cir. 1991) ..................................................................... 12

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 4

Fed. R. Civ. P. 12(c) .................................................................................. 4

**FEDERAL STATUTES**

1 U.S.C. § 7 ............................................................................................... 5

26 U.S.C. § 401(a)(11)(A)(ii) .................................................................... 7

26 U.S.C. § 401(a)(11)(B)(iii)(I) ............................................................... 7

iv

29 C.F.R. § 2520.102-3(k) ............................................................................................ 12

29 C.F.R. § 2520.102-2(b) ............................................................................................ 12

29 U.S.C § 1002(8) ....................................................................................................... 18

29 U.S.C § 1132(a)(1)(B) .............................................................................................. 18

29 U.S.C § 1132(a)(3) ................................................................................................... 18

29 U.S.C. § 1001 ............................................................................................................. 1

ERISA § 102 ............................................................................................................ 12, 13

ERISA § 102(a), 29 U.S.C. § 1022(a) .......................................................................... 12

ERISA § 102(b), 29 U.S.C. § 1022(b) .......................................................................... 12

ERISA § 202(a)(1)(A), 29 U.S.C. § 1052(a)(1)(A) ....................................................... 6

ERISA § 203(b)(1), 29 U.S.C. § 1053(b)(1) .................................................................. 6

ERISA § 204(h) ............................................................................................................. 13

ERISA § 205(f), 29 U.S.C. § 1055(f) ......................................................................... 5, 6

ERISA § 3(7)-(8), 29 U.S.C. § 1002(7)-(8) ................................................................. 18

ERISA § 404(d), 29 U.S.C. § 1104(d) ........................................................................... 4

ERISA § 502(a)(1)(B) ................................................................................................... 18

ERISA § 502(a)(3) ................................................................................................... 14, 18

ERISA § 502(a), 29 U.S.C. § 1132(a) .......................................................................... 18

**OTHER AUTHORITIES**

5 Corbin on Contracts § 24.23 (2007) .......................................................................... 10

Restatement (Second) of Contracts § 203(c) (1981) ..................................................... 10

Restatement (Second) of Trusts § 183 cmt. d ............................................................... 14

## I.      INTRODUCTION

Jennifer Tobits has properly pled her counterclaim for breach of fiduciary duty under ERISA[1] against Plaintiff Cozen O'Connor P.C. ("Cozen") on two bases.  First, Cozen failed to provide a summary plan description for its retirement plan, the Cozen O'Connor Profit Sharing Plan ("Plan"), that stated Cozen's position that the Plan incorporates the restrictive definition of spouse in the federal Defense of Marriage Act (DOMA) and therefore excludes same-sex spouses from receiving surviving spouse benefits.  This failure violated ERISA's requirement that a summary plan description ("SPD") clearly explain the terms of the plan, including circumstances that may lead to disqualification or ineligibility for benefits.  Second, Cozen failed to provide this information specifically to Ms. Tobits's late spouse, Sarah Ellyn Farley, even though Cozen knew Ms. Farley was married to a same-sex spouse and knew that her spouse's potential ineligibility for survivor benefits was material to her benefits decision-making.  Third Circuit law is clear that a plan fiduciary has an affirmative obligation to disclose information that it knows a participant needs in order to make fully informed decisions about her benefits.

Nonetheless, Cozen seeks judgment on the pleadings as to Ms. Tobits's counterclaim, contending that despite the clear definition of "spouse" in the Plan and the SPD, and despite the absence of any reference to DOMA in the Plan, Ms. Farley somehow should have surmised that Cozen intended the term "spouse" to incorporate the restrictive definition of spouse in DOMA – a federal statute that on its face applies only to federal laws.  Neither the Internal Revenue Code nor ERISA – the two federal laws that the Plan does reference – defines the term "spouse." Although ERISA and the Code mandate that retirement plans provide certain benefits to spouses – and the term "spouse" in the statutes themselves must be interpreted to mean "opposite-sex

---

[1]  The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

spouse" (assuming DOMA is constitutional) – those mandated benefits are not at issue in this case because there is no opposite-sex spouse.

Cozen's assertion that DOMA prevents a private employer from defining the term "spouse" to include a same-sex spouse in a benefits plan has no merit.  By its express terms, DOMA controls only the interpretation of federal laws and regulations, not private instruments. Nothing in DOMA's language prevents private employers who wish to do so from recognizing same-sex spouses as "spouses" under their plans.  No court has held that DOMA controls the interpretation of private employer benefit plans.  Thus, although several federal courts have held DOMA unconstitutional as applied to rights and benefits provided by federal law, this Court need not reach that issue, because this case is about the interpretation of a private employer benefit plan, not the interpretation of federal law.

Cozen's other arguments likewise fail.  Ms. Tobits has statutory standing to bring her counterclaim as a Plan beneficiary because she has a colorable claim to benefits under the Plan. Ms. Tobits's allegations that Cozen knew of Ms. Farley's marital status must be taken as true at the pleadings stage, so Cozen's contrary factual assertions cannot support its motion.

Finally, although Cozen's brief can be read to argue that DOMA precludes private employers from providing any benefits to same-sex spouses, it is undisputed that private employers can and do provide such benefits.  Indeed, Cozen states in its brief that Ms. Farley could have enrolled Ms. Tobits in Cozen's health plan on the basis of their marriage.  (Dkt. No. 31 at 7.)  The question in this case is whether federal law mandates that a plan that defines "spouse" in a way that does not exclude same-sex spouses must nonetheless be interpreted to contain such an exclusion.  The answer is no.  For these reasons, as well as those set forth in Ms.

2

Tobits's brief in support of her motion for judgment on the pleadings as to her cross-claim for benefits under the terms of the plan, Cozen's motion should be denied.

## II.     STATEMENT OF RELEVANT FACTS

The following facts alleged in support of Ms. Tobits's counterclaim are relevant to this motion.  For additional facts relating to the Farley-Tobits marriage and pertinent Plan terms, and a discussion of the procedural history of this case, see Ms. Tobits's Motion for Judgment on the Pleadings as to the Farleys' Cross-Claim and Counterclaim (Dkt. No. 36 at 2-4).

Ms. Farley began work at Cozen in October 2004 and later became a participant in the Cozen Plan.  (*See* Dkt. No. 23, ¶ 34; Dkt. No. 15, ¶ 7; *see* Dkt. No. 3, ¶ 7.)  Ms. Farley and Ms. Tobits were married in Toronto, Canada, on February 17, 2006.  (Dkt. No. 15, ¶¶ 14, 33, 52; *see* Dkt. No. 3, ¶ 14 & Exh. D.)  Cozen personnel were invited to and attended the wedding reception.  (Dkt. No. 15, ¶¶ 33, 52.)  Further, Ms. Farley made one or more written statements to Cozen that she was married.  (*Id*. at ¶ 53.)[2]  Ms. Farley intended that Ms. Tobits be recognized has her spouse, and did not know that Cozen took the position that same-sex spouses might not be recognized as spouses under the Plan.  (*Id.* at ¶ 40.)

Ms. Farley died of cancer on September 13, 2010.  (Dkt. No. 15, ¶¶ 57-59; *see* Dkt. No. 3, ¶ 10; Dkt. No. 23-1, Exh. 5.)  Following her death, Cozen received Ms. Farley's death certificate, which showed that she was married to Ms. Tobits.  (Dkt. No. 23-1, Exh. 5.)  Cozen

---

[2]  Cozen's contrary assertion that it did not know that Ms. Farley was married because she represented herself as being single on forms submitted to the firm's Human Resources Department and did not enroll Ms. Tobits in the firm's Medical Benefit Plan (Dkt. No. 31 at 7) simply underscores the factual disputes regarding Cozen's knowledge of Ms. Farley's marital status which preclude judgment on the pleadings.  Ms. Farley identified herself as single when she was hired because she was single at that time, and the evidence will show that Ms. Farley did not add Ms. Tobits to the Medical Benefit Plan because Ms. Tobits had medical benefits through her employer.  The Court should not draw factual inferences in Cozen's favor at this stage of the litigation.  *Mele v. Fed. Reserve Bank*, 359 F.3d 251, 253 (3d Cir. 2004); *see also infra* at section III(C).

contacted Ms. Tobits to inquire whether she intended to submit a claim for benefits under the Plan as Ms. Farley's spouse. (Dkt. No. 15, ¶ 89.) Ms. Tobits submitted her and Ms. Farley's marriage certificate. (Dkt. No. 3, ¶ 14 & Exh. D; Dkt. No. 15, ¶ 14.) Cozen then filed this interpleader action.[3] Because Cozen took the position that DOMA controlled the interpretation of "spouse" in the Plan – a position that Ms. Tobits alleges was unknown to Ms. Farley – Ms. Tobits filed her counterclaim for breach of fiduciary duty.

## III.   ARGUMENT

In a Rule 12(c) motion, as with a Rule 12(b)(6) motion, the court will "view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to" the non-moving party. *Mele*, 359 F.3d at 253 (internal quotation marks and alteration omitted). Thus, the moving party cannot prevail unless it establishes "that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Id.* (internal quotation marks omitted). Cozen fails to meet this standard.

### A.   DOMA Does Not Prevent a Private Employer from Defining the Term "Spouse" in its ERISA Plan to Include a Same-Sex Spouse.

At the center of Cozen's motion is the erroneous argument that DOMA dictates that the term "spouse" in its Plan be construed to exclude legally married same-sex spouses, even though the plain language of the Plan, and its definition of the term "spouse," do not state any such

---

[3]  Cozen spends a good deal of its Motion arguing that it is entitled to interpleader relief. (Dkt. No. 31 at 10-12.) Ms. Tobits does not object to entry of judgment on Cozen's interpleader claim, except that she disagrees that Cozen is entitled to recover attorneys' fees or costs. Cozen has a fiduciary duty to resolve claims for benefits under the Plan, including conducting hearings at which claimants may be represented by attorneys and may submit evidence and argument in support of their claims. (Dkt. No. 36-1 at ¶¶ 2.7, 2.8.) *See also* ERISA § 404(d), 29 U.S.C. § 1104(d) (establishing fiduciary duty to administer plan in accordance with its written terms). While Cozen may be permitted to shift this decision-making responsibility to a court through the mechanism of interpleader, it is not entitled to shift the costs of doing so to claimants. Cozen should remain in the case, however, as counterdefendant on Ms. Tobits's breach of fiduciary duty claim, as explained herein.

limitation.  (Dkt. No. 31 at 13-15.)  That argument has no basis in the language of DOMA or any other federal law.

As explained in Ms. Tobits's brief in support of her Motion for Judgment on the Pleadings (Dkt. No. 36), DOMA controls the meaning of the terms "spouse" and "marriage" only when those terms appear in "any Act of Congress, or . . . any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States."  1 U.S.C. § 7.  The Cozen Plan is none of these things.  DOMA does not invalidate the marriages of same-sex couples who legally marry in the growing number of jurisdictions that permit same-sex couples to marry, and/or that honor those marriages.  DOMA does not purport to impose its restrictive definition of the term "spouse" on private employers in their use of that term.  Rather, DOMA establishes a restrictive definition of spouse for the purpose of interpreting federal laws. Nothing in DOMA's language prevents private employers who wish to do so from providing equal benefits by recognizing same-sex spouses in private benefits plans.  The Plan's plain language defines "spouse" by reference to the duration of the marriage, not by reference to the sex of the spouse.  (Dkt. No. 36-1 at ¶ 1.55A.)  This definition is not "in conflict with DOMA," because DOMA does not dictate the meaning of "spouse" in private employer benefit plans. (Dkt. No. 31 at 15.)

Cozen implausibly argues that because the Plan defines "spouse" to include the one-year durational limit permitted by ERISA § 205(f) – which permits a plan to limit survivor annuities to spouses who have been married for a year before the annuity starting date or the participant's death –the Plan must also be construed to adopt DOMA's restrictive definition of "spouse.". (Dkt. No. 31 at 15) (citing 29 U.S.C. § 1055(f)).

Under ERISA § 205(f), plans have the *option* of limiting benefits to spouses who have

been married at least a year.  If a plan does not require a duration longer than a year for a marriage to be recognized, it has complied with ERISA § 205(f).  Section 205(f) is framed in permissive, not mandatory terms,[4] indicating that a plan may provide a survivor annuity to spouses who have been married for less than a year.  By the same token, a plan may offer a survivor annuity to spouses who are not "spouses" within the meaning of DOMA, so long as it also provides a survivor annuity to spouses within the meaning of DOMA.  That is what the Cozen Plan has done.

The fact that ERISA does not prohibit plans from including same-sex spouses as such is also evident from other federal statutes.  As discussed in Ms. Tobits's Motion for Judgment on the Pleadings, when Congress intends to prohibit employee benefit plans from providing benefits to persons other than those on an enumerated list, it has done so explicitly, and no provision of the IRC or ERISA places such a restriction on any type of ERISA plan.  (*See* Dkt. No. 36 at 10-11.)  Therefore, even assuming that DOMA is valid and that ERISA's mandatory spousal benefits provisions therefore do not protect a same-sex spouse like Ms. Tobits, the law leaves the Cozen Plan free to define "spouse" to include Ms. Tobits.  Ms. Tobits is not seeking a benefit mandated by ERISA.  Instead, she is seeking a benefit under the Plan terms.

---

[4]  Many provisions of ERISA are similarly permissive.  For example, ERISA § 203(b)(1) permits a pension plan, in computing periods of service, to disregard years of service earned by an employee before age 18.  29 U.S.C. § 1053(b)(1).  However, no one contends that a plan *must* impose such a restriction – plans are free to recognize years of service earned before age 18 if they choose to do so.  Likewise, a pension plan *may* condition participation on attaining a particular age, so long as that age is not greater than 21, and/or on completing one year of service.  ERISA § 202(a)(1)(A), 29 U.S.C. § 1052(a)(1)(A).  However, if an employer wishes to design its pension plan so as to allow its employees of any age to begin participation immediately upon starting work, it is free to do so.  ERISA § 205(f) functions in the same way: it permits a plan to recognize only those marriages of at least one year's duration – something many employers may choose to do in the interest of simplifying plan administration – but allows a plan to recognize deathbed marriages or marriages entered on the eve of retirement if the employer chooses to design the plan to do so.

6

For the same reason, contrary to Cozen's stated concern, treating same-sex spouses as "spouses" under the Plan will not threaten the tax-qualification of the Plan. (*See* Dkt. No. 31 at 14-15.)  Section 401 of the Internal Revenue Code states that certain benefits must be provided to surviving spouses.  26 U.S.C. § 401(a)(11)(B)(iii)(I).[5]  Assuming that DOMA is valid, Section 401 simply requires that certain benefits must be provided to surviving opposite-sex spouses. However, the IRC does not prohibit a Plan from providing benefits to a same-sex spouse where there is no opposite-sex spouse, as is the case here.  A participant cannot have two spouses, so it is impossible that a plan could be out of compliance with the Code's requirement that a benefit be provided to a surviving opposite-sex spouse where one exists by providing a survivor benefit to a same-sex spouse, because doing so could not cause the plan to fail to provide benefits to an opposite-sex spouse.  Apart from mandating certain required protections for opposite-sex spouses, the Code does not purport to dictate how private employers may define who counts as a spouse under the employer's own benefits plan.

In sum, the Plan need not limit the meaning of the term "spouse" to opposite-sex spouses in order to comply with ERISA.  And, as a matter of simple contract law, the Plan does not so limit the meaning of "spouse."

---

[5]  Specifically, the Code provides that a trust forming part of a plan "shall not constitute a qualified trust under this section unless . . . in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity is provided to the surviving spouse of such participant."  26 U.S.C. § 401(a)(11)(A)(ii).  If DOMA is a valid statute, then a participant in a same-sex marriage has no surviving spouse for purposes of this provision, so this provision is inapplicable.  Likewise, the Code provides that the annuity requirement does not apply if a plan is an individual account plan that "provides that the participant's nonforfeitable accrued benefit . . . is payable in full, on the death of the participant, to the participant's surviving spouse (or, if there is no surviving spouse . . . to a designated beneficiary)."  26 U.S.C. § 401(a)(11)(B)(iii)(I).  Again, if DOMA is constitutional, then a participant in a same-sex marriage is a participant with no surviving spouse.  Because these provisions do not apply unless a participant has a surviving spouse within the meaning of DOMA, providing a benefit to a surviving same-sex spouse cannot jeopardize a plan's tax qualification.

## B.     The Plan Language Is Unambiguous.

Cozen admits in its motion that its "[p]lan language is not ambiguous," and contrary to Cozen's assertion, Ms. Tobits does not argue that the Plan leaves the term "spouse" undefined or that the Plan's definition of "spouse" is ambiguous.  (Dkt. No. 36 at 16.)  The Plan unambiguously defines "spouse" as the person to whom the participant was married for at least one year as of the relevant date – death or retirement.  (*See* Dkt. 15 at ¶¶ 82, 90.)  Cozen apparently agrees that but-for the application of DOMA, the Plan term "spouse" includes same-sex spouses.  However, Cozen argues that the Plan's statement that it will be construed according to the Internal Revenue Code, ERISA, and non-preempted Pennsylvania law somehow brings the Plan's definition of "spouse" under the purview of DOMA.  (Dkt. No. 31 at 16.)  This assertion is wrong.  The Cozen Plan has an unambiguous internal definition of the term "spouse."  Under these circumstances, there is no reason to look to the Code and ERISA (which do not themselves define "spouse"), much less to DOMA.[6]

As set forth in Ms. Tobits's motion, "Claims for benefits based on the terms of an ERISA plan are contractual in nature and are governed by federal common law contract principles." *Baldwin v. University of Pittsburgh Medical Center*, 636 F.3d 69, 75 (3d Cir. 2011).  If the Plan is unambiguous, the Court must determine Ms. Tobits's entitlement to benefits according to its terms.  *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d 710, 715 (3d Cir. 1996) ("Our approach does not authorize a trial judge to demote written word to reduced status in contract interpretation…the parties remain bound by the appropriate objective definition of the

---

[6]  Likewise, as demonstrated in Ms. Tobits's Motion for Judgment on the Pleadings, Pennsylvania's Defense of Marriage Act does not apply because it (1) is preempted by ERISA (and therefore is not "nonpreempted" as required by the Plan), and (2) does  not survive a conflict of laws analysis as against Illinois's greater interest in the outcome.  (*See* Dkt. No. 36 at 15-19.)

8

words they use to express their intent.") (internal quotation marks omitted).  Courts "interpret the

terms of the [plan] in an ordinary and popular sense, as would a person of average intelligence

and experience."  *Diaz v. Prudential Life Ins. Co.*, 499 F.3d 640, 643-44 (7th Cir. 2007);

*Hardester v. Lincoln Nat. Life Ins. Co.*, 33 F.3d 330, 334 (4th Cir. 1994) (internal quotation

marks omitted) (holding that courts must interpret ERISA plans "according to the understanding

of a reasonable layperson.").

The Cozen Plan is clear on its face as to the meaning of the term "spouse," defining the

term to mean the person to whom a participant has been married throughout the year prior to the

earlier of the participant's death or the participant's commencement of benefits.  (Dkt. No. 36-1

at ¶ 1.55A.)  Thus, under the terms of the Plan, the only condition of eligibility for spousal

benefits is the durational requirement for the marriage.  The Plan's definition of "spouse"

contains no requirement that the spouse be of the opposite sex from the participant or that the

marriage be recognized under any particular state law.[7]  Because the Plan unambiguously defines

its own terms, the Court should apply them as written.[8]  There is no basis to import additional

eligibility requirements for spousal status into the Plan's definition of "spouse."

Cozen implausibly argues that the term "spouse" in its Plan is governed by DOMA based

on boilerplate statements in the Plan and the SPD that the Plan "shall be construed and enforced

according to" ERISA and the IRC and that the Plan is "subject to federal laws" and "designed to

---

[7]  Cozen notes that courts have upheld plans that defined "spouse" according to state law, citing *Rovira v. AT&T*, 817 F. Supp. 1062, 1072 (S.D.N.Y. 1993).  (Dkt. No. 31 at 15 n.3.)  *Rovira* involved a death benefit under a plan which defined spouse as someone "legally married to the employee at the time of death" and explicitly stated that "the State in which the employee primarily resides sets the criteria for a valid marriage."  817 F. Supp. at 1070.  Here, in contrast, the Plan does not define "spouse" according to state law.  The Plan has its own definition of "spouse" and thus Pennsylvania's "mini-DOMA" is irrelevant.

[8]  The SPD is also clear with respect to the term "spouse."  Like the Plan, the SPD conditions eligibility for spousal benefits on the duration of the marriage, not on the sex of the spouse or on the validity of the marriage under any particular state law.  (Dkt. No. 36-3, Art. VI, p. 12.)

9

comply with applicable legal requirements," respectively.  (Dkt. No. 31 at 16-17.)[9]  That

argument has no merit.  Neither the Plan nor the SPD refers to DOMA, and Cozen cites no

authority for the notion that unambiguous Plan terms should be defined by reference to an

outside source.  In addition, this argument ignores the well-established principle that specific

contractual terms govern over general terms.  *Great Am. Ins. Co. v. Norwin Sch. Dist.,* 544 F.3d

229, 247 (3d Cir. 2008); Restatement (Second) of Contracts § 203(c) (1981); 5 Corbin on

Contracts § 24.23 (2007) ("[T]he more specific term should usually be held to prevail over the

more general term.").  The Plan's clear, specific definition of "spouse" does not need to be

"construed," nor is it trumped by a general reference to compliance with federal law.  To the

extent these provisions are intended to ensure that the Plan does not violate federal law, they are

irrelevant to this case.  As explained above, interpreting the term "spouse" as it is defined in the

Plan, to include same-sex spouses, does not violate any federal law.  There is no federal law

banning marriage by same-sex couples or invalidating such marriages.

> **C.     Ms. Tobits Has Properly Alleged That Cozen Breached Its Fiduciary Duties
> by Failing to Communicate That a Same-Sex Spouse May Not Be Considered
> a "Spouse" Under the Plan.**

Cozen insists that the Plan must be construed by reference to DOMA, and that given the

uncertainty about DOMA's constitutionality, it is unclear whether Ms. Tobits or the Farleys are

entitled to survivor benefits under the Plan.  (Dkt. No. 31 at 13-14, 16; *see* Dkt. No. 36-2 at ¶

6.2(f) (providing that if participant dies without designating a beneficiary, default beneficiary

will be (1) spouse, (2) children, (3) parents).)  As explained above, Cozen is wrong that the Plan

---

[9]  As Cozen admits, the SPD does not establish the terms of the Plan.  *See CIGNA Corp. v.
Amara*, 131 S.Ct. 1866, 1877-78 (2011).  Instead, the SPD represents Cozen's effort, as Plan
Administrator, to describe the Plan in "readily understandable form."  *Id*. at 1877.  Thus, where
the Plan incorporates only specific federal laws – the IRC and ERISA – the SPD's reference to
"federal laws" and "applicable legal requirements" cannot expand the Plan to incorporate all
federal laws.

must be construed by reference to DOMA, but assuming *arguendo* that it is correct, Cozen had a fiduciary duty to so inform Ms. Farley.  Cozen advances two arguments in support of its request for judgment on the pleadings on Ms. Tobits's breach of fiduciary duty claim:  first, that Cozen properly informed participants in the SPD that the term "spouse" would be interpreted in accordance with DOMA, and second, that Cozen did not know that Ms. Farley was married and thus had no duty to inform her that Ms. Tobits might not be recognized as her spouse.  (Dkt. No. 31 at 16-19.)  Both arguments lack merit.

> **i.    The SPD Did Not Inform the Average Plan Participant That a Same-Sex Spouse May Not Be Covered by the Plan**.

The SPD states in unambiguous terms that the person to whom a participant was married for at least one year will be considered her spouse.  (Dkt. No. 36-3 at Art. VI, p. 12.)  Cozen takes the position that despite this plain language, Plan participants should have understood that DOMA prohibits Cozen from providing benefits to same-sex spouses.  (Dkt. No. 31 at 16-17.) In order to know that there would be uncertainty about the inclusion of same-sex spouses within the ambit of the term "spouse" as used in the Plan, a participant reading the SPD would have to (1) understand that the SPD's general statement that the Plan is "subject to federal laws" means that the term "spouse" would be defined according to DOMA (a proposition which is strongly disputed in this action), (2) read and understand the relevant provisions of ERISA and DOMA, and (3) read and understand the relevant case law regarding DOMA's constitutionality.  ERISA simply does not countenance requiring participants to perform this level of research and analysis in order to understand their rights.[10]

---

[10]  Cozen's argument that no reasonable employee would understand the Plan to provide survivor benefits to same-sex spouses is particularly dubious given the firm's stated commitment to nondiscrimination based on sexual orientation.  The SPD says nothing about excluding same-sex spouses and contains no reference to DOMA, and Cozen holds itself out as treating same-sex

ERISA § 102 requires that the SPD be "written in a manner calculated to be understood by the average plan participant," and that it be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).  Further, the SPD must contain information about "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. § 1022(b), and a pension plan SPD must "describ[e] any joint and survivor benefits provided under the plan, including any requirement that an election be made as a condition to select or reject the joint and survivor annuity." 29 C.F.R. § 2520.102-3(k).  The format of the SPD "must not have the effect to [sic] misleading, misinforming or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102-2(b).  Further, the SPD must not minimize or obscure "any description of exception, limitations, reductions, and other restrictions of plan benefits." *Id.*  If Cozen intended that DOMA controls the definition of "spouse" in the Plan, as it now claims, then the SPD utterly fails to meet these requirements.

The Third Circuit has noted that ERISA § 102 "expresses Congress's desire that the SPD be transparent, accurate, and comprehensive." *Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 378 (3d Cir. 2003).  Where an SPD is misleading or buries important information, courts have found the SPD to be inadequate. *See, e.g.*, *Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 385-86 (9th Cir. 1994); *Veilleux v. Atochem N. Am., Inc.*, 929 F.2d 74, 76 (2d Cir. 1991); *see also Hirt v. The Equitable Ret. Plan*

---

spouses equally.  Therefore, the average employee would not understand that the term "spouse" would be construed to include only opposite-sex spouses. *See, e.g.*, Cozen O'Connor's Website ("Cozen O'Connor is an equal opportunity employer and does not discriminate based upon…sexual preference or orientation, cultural behavior, or any other prohibited basis. The firm's non-discrimination policy applies to all aspects of the employment relationship, including hiring and advancement.") (available at http://www.cozen.com/firm.asp?d=1&fpid=12 and last visited September 22, 2011).

*for Employees, Managers, and Agents*, 441 F. Supp. 2d 516, 538 (S.D.N.Y. 2006) (noting that a notice of plan amendment is inadequate under ERISA § 204(h), which contains a parallel requirement that the document be written in a manner calculated to be understood by the average plan participant, "if it is cryptic, or requires research beyond the document itself").

Here, the SPD's failure to state explicitly that same-sex spouses may be excluded from the Plan's definition of "spouse" means that the SPD does not meet the standards of ERISA § 102.  Since DOMA applies only to Acts of Congress and rules and regulations issued by federal agencies, a reasonable Plan participant could not possibly understand that the SPD's boilerplate statement that the Plan is "subject to federal laws" invokes DOMA.  Cozen's argument that any ambiguity in the Plan's definition of "spouse" is created by the law, not by the Plan, is unavailing:  whatever the source of the uncertainty, if Cozen was not certain whether same-sex spouses were covered under the Plan's surviving spouse benefit provisions, it had a duty to explain that in the SPD in order to comply with ERISA § 102.[11]  (*See* Dkt. No. 31 at 16-17.)

Cozen argues that it was not required to advise participants in the SPD that some marriages might not be recognized for purposes of providing a spousal benefit, citing *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011).  (Dkt. No. 31 at 16.)  *Amara* does not excuse fiduciaries from drafting clear, accurate SPDs.  On the contrary, *Amara* stands for the proposition that the SPD's function is to inform participants of the Plan's terms, and failure to do so is a breach of fiduciary duty.  131 S. Ct. at 1872-73, 1879-81 (accepting district court's finding that the SPD

---

[11]  This is particularly true given that Cozen has offices in multiple locations in which same-sex couples may legally marry and/or in which their marriages are recognized or treated as domestic partnerships or civil unions under state law.  *See* http://www.cozen.com/office.asp?d=1 (showing that the firm has offices in Washington, D.C., New York, Toronto, Chicago, Los Angeles, and San Diego).

was misleading and discussing remedies for this fiduciary breach under ERISA § 502(a)(3)).[12]

Thus, Ms. Tobits has a cognizable claim that Cozen breached its fiduciary duty by failing to

inform its employees in the SPD that same-sex spouses might not be covered under the Plan.

> **ii.      Ms. Tobits Has Plausibly Alleged That Cozen Knew of Ms. Farley's Marriage and Breached Its Resulting Fiduciary Duty to Communicate to Ms. Farley That Her Spouse Is Not Covered Under the Plan.**

The Third Circuit has repeatedly held that an ERISA fiduciary has an affirmative duty to

disclose information when it "knows that silence might be harmful." *Harte v. Bethlehem Steel*

*Corp.*, 214 F.3d 446, 452 (3d Cir. 2000) (quoting *Bixler v. Central Pa. Teamsters Health &*

*Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir. 1993)); *accord Jordan v. Federal Express Corp.,* 116

F.3d 1005, 1016 (3d Cir. 1997) (recognizing that "it is clear that circumstances known to the

fiduciary can give rise to this affirmative obligation [to inform] even absent a request by the

beneficiary" (alteration in original) (internal quotation marks omitted)). "The duty extends to

'those material facts, known to the fiduciary but unknown to the beneficiary, which the

beneficiary must know for its own protection.'" *Harte*, 214 F.3d at 452 (quoting *Glaziers &*

*Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.,* 93 F.3d 1171, 1182

(3d Cir. 1996)); *see also* Restatement (Second) of Trusts § 183 cmt. d ("Ordinarily the trustee is

not under a duty to the beneficiary to furnish information to him in the absence of a request for

such information. . . . [However,] he is under a duty to communicate to the beneficiary material

facts affecting the interest of the beneficiary which he knows the beneficiary does not know and

which the beneficiary needs to know for his protection."); *Bixler*, 12 F.3d at 1300 ("[W]hile the

---

[12] *Amara*'s holding that the SPD is not a plan document and does not create plan terms, 131 S. Ct. at 1877-78, does not affect Ms. Tobits's claims. Ms. Tobits claims an entitlement to a survivor benefit under the terms of the Plan, not under the SPD. (Dkt. No. 15 at ¶¶ 80-82, 94.) Her breach of fiduciary duty claim is based (in part) on the SPD's inadequacy, *id.* at ¶ 46, but as noted, this is supported by *Amara*. Ms. Tobits does not seek enforcement of the SPD's terms over the terms of the Plan.

beneficiary may, at times, bear a burden of informing the fiduciary of her material circumstance, the fiduciary's obligations will not be excused merely because she failed to comprehend or ask about a technical aspect of the plan.").

In *Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000), the court described the standard as follows:

> An employee may recover for a breach of fiduciary duty if he or she proves that an employer, acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment. . . . . Moreover, a fiduciary may not remain silent when he or she knows that a reasonable beneficiary could rely on the silence to his or her detriment.

*Id.* at 492.  *See also Harte*, 214 F.3d at 452 ("A misleading statement or omission by a fiduciary is actionable if 'there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision.'") (quoting *In re Unisys Corp. Retiree Med. Ben. ERISA Litigation [Unisys II],* 57 F.3d 1255, 1264 (3d Cir. 1995); *Alberti v. Ron Lewis Auto. Group*, 2006 WL 2773254, at *6 (W.D. Pa. Sept. 12, 2006) (holding that "plan beneficiaries may prove a breach of fiduciary duty by showing: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a failure to inform on the part of the defendant; (3) the materiality of that failure to inform; and (4) plaintiff's detrimental reliance on the incomplete information").

Thus, if the Plan's definition of "spouse" is unclear, Cozen had a duty to inform Ms. Farley that Ms. Tobits might not fall within the definition and would therefore be denied benefits under the Plan – or forced to litigate her claim – in the absence of a beneficiary designation. This information is material: a reasonable employee married to a same-sex spouse would need it

in order to make an adequately informed retirement decision and take affirmative steps to protect herself and her spouse.[13]

Cozen agrees that fiduciaries have an affirmative duty to disclose material facts (*see* Dkt. No. 31 at 17-18), but argues that it cannot be liable for a breach because it did not know of Ms. Farley's marriage. Whether Cozen breached its fiduciary duty hinges in part on whether it knew that its silence regarding the rights and benefits of same-sex spouses under the Plan might be harmful. This is a fact-intensive issue, inappropriate for resolution on the pleadings. Ms. Tobits has plausibly alleged that Cozen knew about her marriage to Ms. Farley based on the facts that Cozen personnel attended their wedding and Ms. Farley informed Cozen that she was married. (Dkt. No. 15, ¶¶ 33-34, 52-53.) She has also plausibly alleged that Cozen knew that Ms. Farley had not submitted a valid designation of beneficiary form prior to her death, that Cozen knew that the provisions of the Plan might create uncertainty about whether Ms. Tobits would be recognized as Ms. Farley's surviving spouse, and that Cozen nonetheless failed to tell Ms. Farley that she needed to execute a beneficiary designation naming Ms. Tobits in order to ensure that Ms. Tobits would be entitled to a death benefit under the Plan. (Dkt. No. 15 ¶¶ 35-37, 40-41, 45.) Viewing these facts in the light most favorable to Ms. Tobits, the Court cannot conclude as a matter of law that Cozen did not breach its fiduciary duties. *Mele*, 359 F.3d 251 at 253. Who knew about Ms. Farley's and Ms. Tobits's marriage,[14] whether those individuals' knowledge can be imputed to Cozen, and whether and how Cozen had considered or analyzed how same-sex

---

[13]  Even if the Court is not convinced at this stage about the materiality of this information, there are factual issues which preclude judgment on the pleadings. *See, e.g.*, *Jordan*, 116 F.3d at 1006-10, 1016-17 (holding that there was a genuine issue of material fact as to whether irrevocability of a retirement election was likely to affect a reasonable employee's retirement decisions, and whether a failure to explain it constituted a breach of the fiduciary's duties).

[14]  For example, the evidence will show that Jim Tarman, managing partner of Cozen's Chicago office (which has fewer than 25 attorneys) knew that Ms. Farley was married to Ms. Tobits.

spouses would be treated under the Plan terms prior to Ms. Farley's death are all questions of fact that can only be resolved through discovery.[15]

In sum, Ms. Tobits has properly alleged that Cozen's SPD was inadequate in that it failed to advise participants that some marriages might not be recognized for purposes of providing a death benefit. (Dkt. No. 15 at ¶ 46.) This is material information: a reasonable participant would want to know that her spouse might not be considered a spouse under the terms of the Plan. There is no question that Cozen is a fiduciary of the Plan and that Cozen drafted the SPD in this capacity. Ms. Tobits's factual allegations give rise to the reasonable inference that Cozen knew that Ms. Farley had a same-sex spouse, and thus it knew that she might be harmed by its silence about the possibility that her spouse would not be considered a spouse under the Plan, and yet it stayed silent. (*Id*. at ¶¶ 33-36, 40, 45, 88-89.) Thus, Ms. Tobits has adequately pled that Cozen breached its fiduciary duty to disclose material information to Ms. Farley.

**D.    Ms. Tobits Has Standing to Assert the Breach of Fiduciary Duty Claim.**

Cozen's argument that Ms. Tobits lacks standing to assert breach of fiduciary claims relating to Ms. Farley's Plan account simply rehashes its argument on the merits, because it depends on Cozen's erroneous conclusion that DOMA prohibits private employers from defining the term "spouse" to include individuals who are legally married to a person of the same-sex. Ms. Tobits has a colorable claim that she is a beneficiary under the Plan, and thus she has standing to bring ERISA claims on her own behalf.[16]

---

[15]   The Plan requires that it be interpreted "in a nondiscriminatory manner based upon uniform principles consistently applied." (Dkt. No. 36-1 at ¶ 2.3.) Thus, how Cozen has handled past claims for surviving spouse benefits – whether by same-sex or opposite-sex spouses – in the absence of a beneficiary designation is relevant to the proper interpretation here.

[16]   Ms. Tobits also has standing to bring ERISA claims on Ms. Farley's behalf. She has a colorable claim that she is the personal representative of Ms. Farley. (Dkt. No. 15 at ¶ 29.) If she is successful, she will be entitled to bring any claims that Ms. Farley could have brought.

Cozen correctly notes that Ms. Tobits has standing to bring claims under ERISA sections 502(a)(1)(B) or 502(a)(3) if she is beneficiary of the Plan, meaning that she "is or may become entitled to a benefit thereunder." ERISA §§ 502(a)(1)(B), 502(a)(3), 3(8); 29 U.S.C §§ 1132(a)(1)(B), 1132(a)(3), 1002(8). (Dkt. No. 31 at 19.) The Third Circuit has held that an ERISA plaintiff has prudential and statutory standing if his or her "grievance . . . arguably fall[s] within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Baldwin*, 636 F.3d at 75 (quoting *Miller v. Rite Aid Corp.*, 334 F.3d 335, 340 n.1 (3d Cir. 2003)); *see also Leuthner v. Blue Cross & Blue Shield*, 454 F.3d 120, 126 (3d Cir. 2006). The "'zone of interests' inquiry 'is inexorably tied to the question of whether a plaintiff can meet the definitions of either a participant or beneficiary.'" *Baldwin*, 636 F.3d at 75 (quoting *Miller*, 33 F.3d at 341). Thus, if Ms. Tobits has a "colorable claim that . . . [she] will prevail in a suit for benefits," she has standing to bring claims on her own behalf for benefits under the Plan and breach of fiduciary duty. *Id.* (citation omitted).[17] The burden of persuasion is "less exacting than that needed to establish a likelihood of success on the merits," *id.*, and the Third Circuit construes ERISA's standing requirements broadly. *See Edmondson v.*

---

Thus, Ms. Tobits has standing to pursue claims on Ms. Farley's behalf. *See Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1161 n.5 (3d Cir. 1988) (affirming the district court's conclusion that because plaintiffs would be participants in the plan if successful in their action, they had standing to bring a claim for benefits). The Court need not decide this issue, though: regardless of whether Ms. Tobits has standing to proceed on Ms. Farley's behalf at this time, she has standing to proceed on behalf of herself, and thus there is no basis on which the Court can enter judgment. The litigation will proceed identically whether Ms. Tobits is bringing the fiduciary breach claim on her own or Ms. Farley's behalf.

[17] Although *Baldwin* concerns a claim for benefits under ERISA § 502 (a)(1)(B), not a claim for breach of fiduciary duty under ERISA § 502(a)(3), both subsections allow a participant or beneficiary to bring suit, and ERISA defines these terms for the statute as a whole. *See* ERISA § 502(a), 29 U.S.C. § 1132(a); *see also* ERISA § 3(7)-(8), 29 U.S.C. § 1002(7)-(8) (defining "participant" and "beneficiary"). The Third Circuit has used the same standing analysis for both types of claims. *See Leuthner v. Blue Cross & Blue Shield*, 454 F.3d 120, 124 (3d Cir. 2006) (§ 502(a)(3) claim); *Miller v. Rite Aid Corp.*, 334 F.3d 335 (3d Cir. 2003) (§ 502(a)(1)(B) claim).

*Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869, 882-83 (E.D. Pa. 2011) (also noting that its "conclusion that Plaintiff has standing is consistent with the liberal approach of the Third Circuit to challenges to subject matter jurisdiction.  Plaintiff's claim neither 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' nor is 'wholly insubstantial and frivolous'") (quoting *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000)).

Ms. Tobits easily meets this standard.[18]  She has plausibly alleged that she is Ms. Farley's spouse, and is thus entitled to a survivor benefit under the terms of the Plan.  (Dkt. No. 15 at ¶¶ 3, 28, 86, 94.)  Thus, she has asserted a colorable claim that she is a beneficiary of the Plan. Cozen admitted as much by initiating this Action:  if there were no colorable claim that Ms. Tobits was Ms. Farley's beneficiary, Cozen's interpleader claim would not be necessary.  (Dkt. No. 31 at 11) ("Despite what the Farleys view the law to clearly dictate, [Ms.] Tobits informed Cozen O'Connor she would make a claim, and has indeed brought a claim, that must be recognized without respect to its merits.").  The only way the Court could conceivably find that Ms. Tobits does not have a colorable claim is by holding that DOMA controls the definition of "spouse" in the Plan, and that DOMA is constitutional.  Both conclusions would be incorrect, *see supra* at section III(A), but the Court need not reach the constitutionality question because

---

[18]  Ms. Tobits also easily meets the standard for constitutional standing, which requires a party to show an "injury in fact," a causal connection between the injury and the conduct complained of, and that the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  In an ERISA case, constitutional standing is established if the party has a colorable claim to relief. *Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869, 879-80 (E.D. Pa. 2011).  Thus, Ms. Tobits has constitutional standing for the same reasons she has prudential and statutory standing. *See also Harzewski v. Guidant Corp.*, 489 F.3d 799, 803 (7th Cir. 2007) (holding that plaintiffs "obviously" had constitutional standing "because if they win they will obtain a tangible benefit").  Cozen does not meaningfully dispute that Ms. Tobits has constitutional standing.  (Dkt. No. 31 at 13.)

DOMA is irrelevant to the interpretation of the Plan.  The Court should therefore reject Cozen's arguments that Ms. Tobits lacks standing.[19]

## IV.     CONCLUSION

For the foregoing reasons, and those set forth in her memorandum in support of her motion for judgment on the pleadings, Ms. Tobits respectfully requests that the Court deny Cozen's Motion for Judgment on the Pleadings.

Dated:  September 22, 2011                    Respectfully submitted,

*/s/ Amy Whelan*
Amy Whelan, Esquire
Melanie S. Rowen, Esquire
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Admitted *Pro Hac Vice*

Benjamin L. Jerner, Esquire
Tiffany L. Palmer, Esquire
Jerner & Palmer, P.C.
5401 Wissahickon Avenue
Philadelphia, PA 19144

Teresa S. Renaker, Esquire
Julie H. Wilensky, Esquire
Lewis, Feinberg, Lee, Renaker & Jackson, P.C.
476 9th Street
Oakland, CA 94607
Admitted *Pro Hac Vice*

Attorneys for Defendant/Counterclaim
Plaintiff/Cross-Claimant Jennifer J. Tobits

---

[19]  Even if the Court is not convinced that Ms. Tobits has a colorable claim for benefits, she also has "but-for" standing:  she would have been a beneficiary of the Plan but for Cozen's alleged breach of fiduciary duty.  *See Leuthner*, 454 F.3d at 128-29 (holding that a plaintiff has statutory standing if she "can in good faith plead that she was an ERISA plan participant or beneficiary and that she still would be but for the alleged malfeasance of a plan fiduciary").

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

COZEN O'CONNOR, P.C.,

    Plaintiff

        v.

JENNIFER J. TOBITS and
DAVID M. FARLEY and
JOAN F. FARLEY, h/w,

    Defendants

Case Number 2:11-cv-00045

Judge:  C. Darnell Jones, II

## <u>CERTIFICATE OF SERVICE</u>

I, Amy Whelan, hereby certify that a copy of Defendant Jennifer J. Tobits's "Opposition to Plaintiff Cozen O'Connor, P.C.'s Motion For Judgment On The Pleadings" was served this 22nd day of September 2011 upon all counsel via the Court's CM/ECF system.  This document is available for viewing and downloading from the CM/ECF system.

*/s/ Amy Whelan*
 Amy Whelan, Esquire