

Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321

March 14, 2012

Susan Katz Hoffman
267.402.3015 direct
267.402.3000 main
267.430.7568 fax
shoffman@littler.com

**VIA FACSIMILE AND ELECTRONIC FILING**

The Honorable C. Darnell Jones, II
United States District Court
601 Market St.
Philadelphia, PA 19106

Re:   Cozen O'Connor, P.C. v. Jennifer J. Tobits, David M. Farley, and Joan F. Farley, No. 2:11-cv-00045

Dear Judge Jones:

At oral argument on March 12, 2012, you expressed interest in seeing the relevant portions of the IRS-approved prototype plan document used by our law firm (and many other employers), which allows an employer to include domestic partners (including same-sex spouses) as "spouses" for all purposes under the plan. In accordance with your request, I am enclosing the following pages (the full plan document and adoption agreement total nearly 200 pages, and therefore I have spared you the burden of leafing through them all):

1. Cover page for Adoption Agreement ("AA") of the Charles Schwab 401(k) Non-Standardized Prototype Plan

2. Page 26 of AA, showing distributions upon death (under other sections of the AA, accounts transferred from money purchase plans are subject to the QJSA and QPSA requirements; other accounts are distributable only in the form of lump sums or installments, but are subject to the requirement that a Spouse consent to the naming of a non-Spouse beneficiary)

3. Page 30 of AA, showing that this employer elected the Domestic Partner option (section 20.5), and also including the reference to IRS approval of the prototype document.

4. Cover page for Basic Plan Document ("BPD")

5. Page 6 of PBD defining Beneficiary

6. Page 14 of BPD defining Domestic Partner

7. Pages 31-32 of BPD defining QJSA and QPSA

8. Page 36 of BPD defining "Spouse"

littler.com

The Honorable C. Darnell Jones, II
March 14, 2012
Page 2

9. Pages 85-87 of BPD providing for death benefit to Surviving Spouse

10. Page 124 of BPD providing that a Domestic Partner has all rights of a Spouse under the Plan but that until ERISA recognizes Domestic Partner rights a Domestic Partner can enforce his or her rights under the Plan under state contract law.

11. Our Firm's "certification" form allowing a same-sex spouse to be registered as a Domestic Partner for purposes of the Firm's benefit plans, with the only tax restriction relating to welfare benefit coverage, which is not entitled to favorable tax treatment because of the Defense of Marriage Act.

Because I understand that the current status of this case involves motions for judgment on the pleadings, these materials should be considered supplemental to the brief filed by us on behalf of the Human Rights Campaign and Equality Forum, rather than part of the evidentiary record submitted by the parties.

Respectfully submitted,

Littler Mendelson, P.C.

Susan Katz Hoffman
SKH/me
Enclosures
cc: Counsel of Record

Firmwide:109803636.1 850000.1732

# 401(k) Non-Standardized Prototype Adoption Agreement

*The Charles Schwab Defined Contribution Plan and Trust*

*charles* SCHWAB

## Section 15. Distribution Provisions

**15.1** **Normal Form of Distribution for Distributions Other Than Death Benefits.** The benefit payable to a Participant who Terminates Employment with the Employer for reasons other than death will be distributed in the manner selected below.

(a) [x] **Lump Sum Payment** < [x] and the Optional Forms of Distribution are: *(check all that apply)* >

 [x] Installment payments
 [x] Partial payments as requested from time to time by the Participant
 [ ] Any form of annuity which can be purchased from an insurance company *(subject to the QJSA rules)*

(b) [ ] **Installment Payments** < [ ] and the Optional Forms of Distribution are: *(check all that apply)* >

 [ ] A lump sum payment
 [ ] Partial payments as requested from time to time by the Participant
 [ ] Any form of annuity which can be purchased from an insurance company *(subject to the QJSA rules)*

(c) [ ] **Qualified Joint and Survivor Annuity** < [ ] and the Optional Forms of Distribution are: *(check all that apply)* >

 [ ] A lump sum payment
 [ ] Installment payments
 [ ] Partial payments as requested from time to time by the Participant
 [ ] Any other form of annuity which can be purchased from an insurance company

**15.2** **Distribution of Benefits Because of Retirement.** With respect to a Participant who Terminates Employment because of retirement or on or after his or her Normal (or Early) Retirement Date, distribution will be made in a form permitted under Section 15.1 and will occur within an administratively reasonable time after the Participant's Normal (or Early) Retirement Date.

**15.3** **Distribution of Benefits Because of Disability.** With respect to a Participant who Terminates Employment because of his or her Disability, distribution will be made in a form permitted under Section 15.1 and in accordance with the provisions selected below.

(a) **Time of Distribution.** Distribution of a Disability Benefit will be made: *(check one)*
 [ ] Within an administratively reasonable time after Termination of Employment
 [x] In accordance with the distribution requirements in Section 15.5 below

(b) **Definition of Disability.** A Participant will be considered to have suffered a Disability for Plan purposes if the Participant suffers a mental or physical impairment while still an Employee which: *(check all that apply)*
 [ ] In the opinion of a physician acceptable to the Administrator, totally and permanently prevents the Participant from engaging in any occupation for pay or profit.
 [x] In the opinion of a physician acceptable to the Administrator, totally and permanently prevents the Participant from performing customary and usual duties for the Employer
 [ ] In the opinion of the Social Security Administration, qualifies the Participant for disability benefits under the Social Security Act in effect on the date the Participant suffers the mental or physical impairment.
 [ ] In the opinion of the insurance company, qualifies the Participant for benefits under an Employer-sponsored long-term disability plan which is administered by an independent third party.

(c) [ ] **Exceptions.** Notwithstanding (b) above, a Participant will not be considered to have suffered a Disability for purposes of the Plan if the mental or physical impairment is the result of: *(check all that apply)*
 [ ] The illegal use of drugs or intoxicants
 [ ] An intentionally self-inflicted injury or sickness
 [ ] An injury suffered as a result of an unlawful or criminal act by the Participant

※ **15.4** **Distribution of Benefits Upon Death.** With respect to any portion of a deceased Participant's Vested Aggregate Account which is subject to the QJSA requirements, any death benefit payable therefrom to such deceased Participant's surviving Spouse will be distributed as a Qualified Pre-Retirement Survivor Annuity unless the QPSA has been waived by the Participant in accordance with Section 5.8 of the Basic Plan (or has been waived by the surviving Spouse if elected in paragraph (c) below). With respect to any death benefit payable to a non-Spouse Beneficiary, any death benefit payable to a surviving Spouse where the QPSA has been waived, or any death benefit payable from a portion of a deceased Participant's Vested Aggregate Account which is not subject to the QJSA requirements, any such death benefit will be distributed in the form of distribution selected in paragraph (a) below.

**19.2** ☐ **Revocation of SIMPLE Provisions.** The Sponsoring Employer revokes the 401(k) SIMPLE Provisions previously elected, effective as of January 1 next following the date this Section 19.2 is signed and dated below by the Sponsoring Employer.

By_____ *(on behalf of the Employer)*   Dated_____

## Section 20. Miscellaneous Provisions

**20.1** **Limitation Year.** In applying the limitations under Code §415, the Limitation Year will be:

☒ Plan Year
☐ The Fiscal Year ending on or within the Plan Year
☐ The calendar year ending on or within the Plan Year

**20.2** **Failsafe Allocations.** ☐ For any Plan Year in which the Plan fails to satisfy the average benefit percentage test of Code §410(b)(2) or the average benefits test of Regulation §1.401(a)(4), in accordance with Section 3.15 of the Basic Plan to the extent necessary to insure that the Plan satisfies one of the tests set forth in Code §410(b)(1)(A) (in which the Plan initially fails to benefit at least 70% of Non-Highly Compensated Employees) or Code §410(b)(1)(B) (in which the Plan initially fails to benefit a percentage of Non-Highly Compensated Employees that is at least 70% of the percentage of Highly Compensated Employees who benefit under the Plan), an additional Employer contribution may be made and allocated for certain Participants who are not Benefiting Participants for that Plan Year pursuant to the rankings below.

(a) **Participants eligible for the failsafe allocation will first be ranked by their** *(check one)*
☐ Hours of Service *(or months of Service if Elapsed Time)* beginning with the < ☐ highest > < ☐ lowest > number
☐ Compensation beginning with the < ☐ highest > < ☐ lowest > amount

(b) ☐ **Before an allocation is made, the Participants in (a) will be further ranked** *(check one)*
☐ Beginning with those who are employed on the last day of Plan Year
☐ Beginning with those who are credited with at least 1,000 hours of service *(6 months of service if elapsed time)*

**20.3** **Multiple Defined Contribution Plans.** If a Participant (a) is or was covered under two or more current or terminated plans sponsored by the same Employer (or Employers in the same controlled or affiliated service group); or (b) is covered under either a welfare benefit fund as defined in Code §419(e), or an individual medical account as defined in Code §415(l)(2) under which amounts are treated as Annual Additions with respect to any Participant in this Plan, Annual Additions will be adjusted as follows:

☒ As set forth in Article 6 of the Basic Plan so the Annual Additions under this Plan will be reduced first
☐ As set forth in the Annual Addition Adjustment Addendum.

**20.4** ☒ **Protected Benefits.** The benefits set forth in the "Protected Benefits Addendum" are also permitted.

**20.5** ☒ **Domestic Partners.** A Participant's Domestic Partner is treated as a Spouse under the terms of Plan.

**20.6** **Prototype Sponsor Information.** The Prototype Sponsor certifies that it will inform the Sponsoring Employer of any amendments to the Plan or of the Prototype Sponsor's discontinuance or abandonment of the Plan. For more information about the Plan, a Sponsoring Employer may contact the Prototype Sponsor (or its authorized representative) at the following address:

Prototype Sponsor __Charles Schwab Trust Co._____

Address __215 Fremont Street_____

City __San Francisco_____ State __CA__ ZIP Code __94105_____ Phone __(888) 444-4015_____

**20.7** **Reliance.** The adopting Employer may rely on an opinion letter issued by the Internal Revenue Service as evidence that the plan is qualified under Code §401 only to the extent provided in Revenue Procedure 2005-16. The Employer may not rely on the opinion letter in certain other circumstances or with respect to certain qualification requirements that are specified in the opinion letter issued with respect to the plan and in Revenue Procedure 2005-16. In order to have reliance in such circumstances or with respect to such qualification requirements, application for a determination letter must be made to Employee Plans Determinations of the Internal Revenue Service. This Adoption Agreement may be used only in conjunction with Basic Plan #01. The appropriateness of the adoption of this Plan and the terms of the Adoption Agreement, its qualification with the IRS, and the tax and employee benefit consequences are the responsibility of the Employer and its tax and legal advisors. Failure to properly complete this Adoption Agreement may result in disqualification of the Plan.

# THE CHARLES SCHWAB DEFINED CONTRIBUTION PLAN AND TRUST

# BASIC PLAN # 01

**1.22 Annuity Starting Date.** The term "Annuity Starting Date" means the first day of the first period for which a benefit is paid as an annuity, in the case of a benefit not payable as an annuity, the first day all events have occurred which entitle the Participant to the benefit. The first day of the first period for which a benefit is to be paid by reason of Disability will be treated as the Annuity Starting Date only if it is not an auxiliary benefit.

**1.23 Annual Additions.** The term "Annual Additions" means the sum of the following amounts credited to a Participant's Account for any Limitation Year: (a) Employer contributions; (b) Employee contributions; (c) Forfeitures; (d) amounts allocated to an individual medical account, as defined in Code §415(l)(2), which is part of a pension or annuity plan maintained by the Employer; and (e) amounts derived from contributions paid or accrued that are attributable to post-retirement medical benefits, allocated to the separate account of a Key Employee, as defined in Code §419A(d)(3), under a welfare fund, as defined in Code §419(e), maintained by the Employer. Notwithstanding the foregoing, a Participant's Annual Additions do not include a Participant's rollovers, loan repayments, Catch-up Contributions, repayments of either prior Plan distributions or prior distributions of Mandatory Employee Contributions, direct transfers of contributions from another plan to this Plan, deductible contributions to a simplified employee pension plan, or voluntary deductible contributions.

**1.24 Applicable Contribution Rate.** The term "Applicable Contribution Rate," for a Participant who is a Non-Highly Compensated Employee, means (a) for purposes of the ADP Test, the sum of the Qualified Matching Contributions used in the ADP Test for the Participant who is a Non-Highly Compensated Employee for the Plan Year and the Qualified Non-Elective Contributions made for the Participant who is a Non-Highly Compensated Employee for the Plan Year, divided by the Participant's Code §414(s) Compensation for the Plan Year; and (b) for purposes of the ACP Test, the sum of the Matching Contributions used under the Contribution Percentage Amounts for the Participant who is a Non-Highly Compensated Employee for the Plan Year and the Qualified Non-Elective Contributions made for the Participant who is a Non-Highly Compensated Employee for the Plan Year, divided by the Participant's Code §414(s) Compensation for the Plan Year.

**1.25 Applicable Plan Year.** The term "Applicable Plan Year" means (a) for any Plan Year in which the Prior Year Testing Method is being used, the Plan Year prior to the Plan Year that is being tested; and (b) for any Plan Year in which the Current Year Testing Method is being used, the Plan Year that is being tested.

**1.26 Basic Plan.** The term "Basic Plan" means this document and any amendment thereto including amendments made via page changes and/or Employer resolutions.

**1.27 Beneficiary.** The term "Beneficiary" means the recipient designated by a Participant to receive the benefit payable upon the Participant's death, or the recipient designated by a Beneficiary to receive any benefit which may be payable in the event of the Beneficiary's death prior to receiving the entire death benefit to which the Beneficiary is entitled. All such Beneficiary designations will be made in accordance with the following:

  (a) **Beneficiary Designations By a Participant.** Subject to the provisions of Section 5.8 regarding the rights of a Participant's Spouse, each Participant may designate a Beneficiary in writing with the Administrator. If a Participant designates his or her Spouse and the Participant and his or her Spouse are legally divorced subsequent to the date of the designation, then the designation of such Spouse as a Beneficiary hereunder will be deemed null and void unless the Participant, subsequent to the legal divorce, reaffirms the designation in writing. In the absence of any other designation, the Participant will be deemed to have designated the following Beneficiaries in the following order, provided however, that with respect to clauses (1) and (2) following, such Beneficiaries are then living: (1) the Participant's Spouse, (2) the Participant's issue per stirpes; and (3) the Participant's estate.

  (b) **Beneficiary Designations By a Beneficiary.** In the absence of a Beneficiary designation or other directive from a Participant to the contrary, any Beneficiary may name his or her own Beneficiary under Section 5.2(d) of the Basic Plan to receive any benefits payable in the event of the Beneficiary's death prior to the receipt of all the Participant's death benefits to which the Beneficiary was entitled.

  (c) **Beneficiaries Considered Contingent Until the Death of the Participant.** Notwithstanding any provision in this Section to the contrary, any Beneficiary named hereunder will be considered a contingent Beneficiary until the death of the Participant (or Beneficiary, as the case may be), and until such time will have no rights granted to Beneficiaries under the Plan.

1.55 **Disability.** The term "Disability" means the following, as elected by the Sponsoring Employer:

(a) **Definition.** The term "Disability" means a physical or mental impairment arising after an Employee has become a Participant which, as elected in the Adoption Agreement, either (1) in the opinion of a physician acceptable to the Administrator, totally and permanently prevents the Participant from engaging in any occupation for pay or profit; (2) in the opinion of a physician acceptable to the Administrator, totally and permanently prevents the Participant from performing his or her customary and usual duties for the Employer; (3) in the opinion of the Social Security Administration, qualifies the Participant for disability benefits under the Social Security Act in effect on the date that the Participant suffers the mental or physical impairment; or (4) in the opinion of the insurance company, qualifies the Participant for benefits under an Employer-sponsored long-term disability plan which is administered by an independent third party. With regard go clause (1) and clause (2) above, if a difference of opinion arises between the Participant and the Administrator as to whether the Participant has suffered a Disability, it will be settled by a majority decision of three physicians, one to be appointed by the Administrator, one to be appointed by the Participant, and the third to be appointed by the two physicians first appointed herein.

(b) **Definition of Disability If No Long-Term Disability Plan In Place and/or In Force.** If the definition (or one of the definitions) of Disability as elected by the Sponsoring Employer is the one in paragraph (a)(4) above (a mental or physical impairment which, in the opinion of the insurance company, qualifies the Participant for benefits under an Employer-sponsored long-term disability plan which is administered by an independent third party) and there is not an Employer-sponsored long-term disability plan in place and/or in force at any point while the election of this definition of Disability is in effect, then this definition of Disability will be replaced by the provisions of paragraph (a)(3) above (a mental or physical impairment which, in the opinion of the Social Security Administration, qualifies the Participant for disability benefits under the Social Security Act in effect on the date that the Participant suffers the mental or physical impairment) during the time that an Employer-sponsored long-term disability plan is not in place and/or in force.

(c) **Exceptions.** Notwithstanding the foregoing to the contrary, the term "Disability" will not include any physical or mental impairment that is the result of any of the following exceptions, if elected in the Adoption Agreement: (1) the excessive use of drugs, intoxicants, or other substances; (2) an intentionally self-inflicted injury or sickness; or (3) an injury suffered as a result of an unlawful or criminal act by the Participant.

1.56 **Distribution Calendar Year.** The term "Distribution Calendar Year" means, for purposes of required minimum distributions under Section 5.9, a calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year that contains the Participant's Required Beginning Date. If a Participant elects the Life Expectancy method, then for distributions beginning after the Participant's death, the first Distribution Calendar Year is the calendar year in which distributions are required to begin under Section 5.9(b)(2)(B). The required minimum distribution for the Participant's first Distribution Calendar Year will be made on or before the Participant's Required Beginning Date. The required minimum distribution for other Distribution Calendar Years, including the required minimum distribution for the Distribution Calendar Year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that Distribution Calendar Year.

1.57 **Domestic Partner.** The term "Domestic Partner" means the individual who is recognized to be the domestic partner of the Participant through policies and procedures that are established by the Sponsoring Employer and that may reflect the law of a State or a Commonwealth (or a political subdivision of a State or a Commonwealth).

1.58 **Early Retirement Age.** The term "Early Retirement Age" means the Early Retirement Age, if any, as elected by the Sponsoring Employer in the Adoption Agreement.

1.59 **Early Retirement Date.** The term "Early Retirement Date" means the Early Retirement Date, if any, as elected by the Sponsoring Employer in the Adoption Agreement.

1.60 **Earned Income.** The term "Earned Income" means the net earnings from self-employment in the trade or business with respect to which the Plan is established, for which personal services of the individual are a material income-producing factor. Net earnings will be determined without regard to items not included in gross income and the deductions allocable thereto. Net earnings will be reduced by deductible contributions by the Employer to a qualified retirement plan. Net earnings will be determined with regard to the deduction allowed to the Employer by Code §164(f) for taxable years beginning after December 31, 1989.

**1.136 Prevailing Wage Law.** The term "Prevailing Wage Law" means any statute or ordinance that requires the Employer to pay its Employees working on public contracts at wage rates not less than those determined pursuant to that statute or ordinance to be the prevailing wages for comparable classes of workers in the geographical area where that contract is performed, including the Davis-Bacon Act as set forth in 40 U.S.C. §276(a) et. seq., as amended from time to time, and any similar federal, state or municipal prevailing wage statutes.

**1.137 Primarily Defined Benefit in Character.** The term "Primarily Defined Benefit in Character" means, for Plan Years beginning on or after January 1, 2002, a combination of defined benefit plan(s) and defined contribution plan(s) in which, for more than 50% of Non-Highly Compensated Employees benefiting under the combination of defined benefit and defined contribution plans, the Normal Accrual Rate for the Non-Highly Compensated Employees attributable to benefits provided by the defined benefit plan(s) that are part of the combination exceeds the Equivalent Accrual Rate for the Non-Highly Compensated Employees attributable to contributions under the defined contribution plan(s) that are part of the combination.

**1.138 Prior Year Testing Method.** The term "Prior Year Testing Method" means the nondiscrimination testing method in which (a) for purposes of the ADP Test, the ADP for Participants who are HCEs for the Plan Year being tested is compared to the ADP for Participants who are NHCEs for the Plan Year prior to the Plan Year being tested; and (b) for purposes of the ACP Test, the ACP for Participants who are HCEs for the Plan Year being tested is compared to the ACP for Participants who are NHCEs for the Plan Year prior to the Plan Year being tested.

✱ **1.139 QJSA.** The term "QJSA" means a Qualified Joint and Survivor Annuity.

**1.140 QMAC.** The term "QMAC" means a Qualified Matching Contribution.

**1.141 QMAC Account.** The term "QMAC Account" means a Qualified Matching Contribution Account.

**1.142 QNEC.** The term "QNEC" means a Qualified Non-Elective Contribution.

**1.143 QNEC Account.** The term "QNEC Account" means a Qualified Non-Elective Contribution Account.

✱ **1.144 QPSA.** The term "QPSA" means a Qualified Pre-Retirement Survivor Annuity.

✱ **1.145 Qualified Joint and Survivor Annuity.** The term "Qualified Joint and Survivor Annuity" means, with respect to a Participant who is married on the Annuity Starting Date and has not died before such date, an immediate annuity for the life of the Participant with a survivor benefit for the life of the Participant's surviving Spouse which is not less than 50% nor more than 100% of the annuity that is payable during the joint lives of the Participant and his or her Spouse and which is the amount of benefit which can be purchased with the Participant's Vested Aggregate Account balance. The survivor benefit will be 50% unless a higher percentage is elected by the Participant at the time that the Qualified Joint and Survivor Annuity is to be distributed. With respect to a Participant who is not married on the Annuity Starting Date and has not died before such date, the term "Qualified Joint and Survivor Annuity" means an immediate annuity for his or her life.

**1.146 Qualified Matching Contribution.** The term "Qualified Matching Contribution" means an Employer contribution made to this or any other defined contribution plan on behalf of a Participant on account of Elective Deferrals, Voluntary Employee Contributions, and/or Mandatory Employee Contributions made by such Participant under a plan maintained by the Sponsoring Employer, that is subject to the distribution (but financial hardship distributions are not permitted) and nonforfeitability requirements of Code §401(k) when made to the Plan. Qualified Matching Contributions are available for either the ADP Test or the ACP Test. Qualified Matching Contributions may be used to satisfy the Top Heavy Minimum Allocation requirement pursuant to Section 3.14(e). Qualified Matching Contributions can only be distributed upon the earliest to occur of the following dates: (a) a Participant Terminates Employment (separates from service, for Plan Years beginning before 2002) with the Employer; (b) a Participant dies; (c) a Participant suffers a Disability; (d) an event that is described in Code §401(k)(10) occurs; or (e) a Participant reaches Age 59½ (if on or before such date, a pre-retirement in-service withdrawal of Qualified Matching Contributions is elected in the Adoption Agreement). With respect to clause (d) of the prior sentence, Qualified Matching Contributions can be distributed (in a lump sum only) upon termination of the Plan, so long as the Sponsoring Employer (or an Affiliated Employer) does not maintain an alternative defined contribution plan at any time during the period beginning on the date of Plan termination and ending 12 months after all assets have been distributed from the terminated Plan. However, if at all times during the 24-month period beginning 12 months before the date of Plan's termination, fewer than 2% of the Employees

who were eligible to participate in the 401(k) Plan as of the date of Plan termination are eligible to participate in the other defined contribution plan, then the other defined contribution plan is not an alternative defined contribution plan. In addition, a defined contribution plan is not an alternative defined contribution plan if the defined contribution plan is an employee stock ownership plan as defined in Code §4975(e)(7) or Code §409(a), a simplified employee pension as defined in Code §408(k), a SIMPLE IRA plan as defined in Code §408(p), a plan or contract that is described in Code §403(b), or a plan that is described in Code §457(b) or Code §457(f).

**1.147 Qualified Matching Contribution Account.** The term "Qualified Matching Contribution Account" means the sub-account of a Participant's Account to which his or her Qualified Matching Contributions are allocated.

**1.148 Qualified Non-Elective Contribution.** The term "Qualified Non-Elective Contribution" means an Employer contribution (other than a Matching Contribution or a Qualified Matching Contribution) that is allocated to Participant's Account and that satisfies the following requirements: (a) a Qualified Non-Elective Contribution may be used for the purpose of satisfying either the ADP Test or the ACP Test; (b) a Participant may not elect to receive a Qualified Non-Elective Contribution in cash until distributed from the Plan; (c) a Qualified Non-Elective Contribution is subject to the distribution (but financial hardship distributions are not permitted) and nonforfeitability requirements of Code §401(k) when made to the Plan. Qualified Non-Elective Contributions may be used to satisfy the Top Heavy Minimum Allocation requirement pursuant to Section 3.14(e). Any allocation formula for a Qualified Non-Elective Contribution must satisfy the additional requirements specified in Regulation §1.401(k)-2(a)(6) in order to be used in the ADP Test and Regulation §1.401(m)-2(a)(6) in order to be used in the ACP Test. Qualified Non-Elective Contributions can only be distributed upon the earliest to occur of the following dates: (a) a Participant Terminates Employment (separates from service, for Plan Years beginning before 2002) with the Employer; (b) a Participant dies; (c) a Participant suffers a Disability; (d) an event that is described in Code §401(k)(10) occurs; or (e) a Participant reaches Age 59½ (if on or before such date, a pre-retirement in-service withdrawal of Qualified Non-Elective Contributions is elected in the Adoption Agreement). With respect to clause (d) of the prior sentence, Qualified Non-Elective Contributions can be distributed (in a lump sum only) upon termination of the Plan, so long as the Sponsoring Employer (or an Affiliated Employer) does not maintain an alternative defined contribution plan at any time during the period beginning on the date of Plan termination and ending 12 months after all assets have been distributed from the terminated Plan. However, if at all times during the 24-month period beginning 12 months before the date of Plan's termination, fewer than 2% of the Employees who were eligible to participate in the 401(k) Plan as of the date of the Plan's termination are eligible to participate in the other defined contribution plan, then the other defined contribution plan is not an alternative defined contribution plan. In addition, a defined contribution plan is not an alternative defined contribution plan if the defined contribution plan is an employee stock ownership plan as defined in Code §4975(e)(7) or Code §409(a), a simplified employee pension as defined in Code §408(k), a SIMPLE IRA plan as defined in Code §408(p), a plan or contract that is described in Code §403(b), or a plan described in Code §457(b) or §457(f).

**1.149 Qualified Non-Elective Contribution Account.** The term "Qualified Non-Elective Contribution Account" means the sub-account of a Participant's Account to which Qualified Non-Elective Contributions are allocated.



**1.150 Qualified Pre-Retirement Survivor Annuity.** The term "Qualified Pre-Retirement Survivor Annuity" means a survivor annuity for the life of a deceased Participant's surviving Spouse which is equal to the amount of benefit which can be purchased by such percentage as elected in the Adoption Agreement (but not less than 50%) of the deceased Participant's Vested Aggregate Account determined at the date of death. In determining a Participant's Vested Aggregate Account hereunder, any security interest held by the Plan because of a loan outstanding to the Participant will be taken into consideration and, if applicable, the Participant's own deductible contributions made for Plan Years prior to January 1, 1989 will be disregarded.

**1.151 Reemployment Commencement Date.** The term "Reemployment Commencement Date" means the first day on which an Employee performs an Hour of Service for an Employer or an Affiliated Employer following the Employee's Termination of Employment.

**1.152 Regulation.** The term "Regulation" means any regulation as promulgated by the Secretary of the Treasury or delegates of the Treasury Department, as amended and/or renumbered from time to time. If this Plan references a regulation that is promulgated by any other Department, Agency, Commission, or other federal entity, then the name of such Department, Agency, Commission, or other federal entity will be referenced with such regulation.

**1.166 Safe Harbor 401(k) Plan.** The term "Safe Harbor 401(k) Plan" means a 401(k) Plan which automatically satisfies the ADP Test under Code §401(k), pursuant to Section 3.20.

**1.167 Safe Harbor 401(m) Plan.** The term "Safe Harbor 401(m) Plan" means a 401(m) Plan which automatically satisfies the ACP Test under Code §401(m), pursuant to Section 3.21.

**1.168 Safe Harbor Notice.** The term "Safe Harbor Notice" means a written notice provided by the Employer to all Eligible Employees in accordance with Regulation §1.401(k)-3(d) and/or §1.401(m)-3(e) and complies with the requirements of Section 3.20 and/or 3.21. In addition to any other election periods that may be provided under the Plan, each Eligible Employee may make an initial Elective Deferral election or modify a prior Elective Deferral election during the 30-day period immediately following his or her receipt of a Safe Harbor Notice.

**1.169 Safe Harbor Participant.** The term "Safe Harbor Participant" means each Employee who satisfies all of the following conditions: (a) the Employee is an Eligible Employee for Safe Harbor 401(k) Contribution purposes under Sections 3.1(b) and/or (c) of the Adoption Agreement; (b) the Employee has satisfied the age and/or service requirements for Safe Harbor 401(k) Contribution purposes under Sections 3.2(b) and/or (c) of the Adoption Agreement (unless such requirements have been waived with respect to the Employee under Sections 3.4(b) and/or (c) of the Adoption Agreement; (c) the Employee has entered the Plan as a Participant for Safe Harbor 401(k) Contribution purposes under Sections 3.3(b) and/or (c) of the Adoption Agreement; and (d) the Employee is eligible to make an Elective Deferral to the Plan at any time during the Plan Year or would be eligible to make Elective Deferrals but for a suspension due to a financial hardship distribution or a statutory limitation (such as the limits of Code §402(g) or §415).

**1.170 Self-Employed Individual.** The term "Self-Employed Individual" means an individual who owns an interest in the Employer (other than a stock interest) and has Earned Income for the taxable year from the trade or business for which the Plan is established or would have had Earned Income but for the fact that the trade or business had no net profits for the taxable year.

**1.171 Service.** The term "Service" means (a) Years of Service when the Counting of Hours Method is being used and (b) Periods of Service when the Elapsed Time Method is being used.

**1.172 Sponsoring Employer.** The term "Sponsoring Employer" means the business entity named in Section 1.2 of the Adoption Agreement that sponsors the Plan under the terms of the Adoption Agreement (and any successor thereto that elects to assume sponsorship of this Plan).

**1.173 Spousal.** The term "Spousal" means of, or related to, a Spouse.

**1.174 Spouse.** The term "Spouse" means the person to whom a Participant is legally married, and, if elected in the Adoption Agreement, the Participant must be married to such person throughout the one year period ending on the earlier of the Annuity Starting Date or the Participant's death in order for the person to be considered the Participant's Spouse. Furthermore, a former Spouse will be treated as the Participant's Spouse or surviving Spouse to the extent provided under a qualified domestic relations order as described in Code §414(p).

**1.175 Statutory Code §415 Compensation.** The term "Statutory Code §415 Compensation" means, in applying the Code §415 limits, an Employee's compensation as determined under Regulation §1.415-2(d)(2) and (3), to wit:

  (a) **Amounts includable as Statutory Code §415 Compensation.** Statutory Code §415 Compensation includes all of the following: (1) wages, salaries, fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Sponsoring Employer maintaining the Plan to the extent that the amounts are includable in gross income (including, but not limited to, commissions paid salespersons, compensation for services based on a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements, or other expense allowances under a non-accountable plan as described in Regulation §1.62-2(c)); (2) in the case of a Self-Employed Individual, Earned Income; (3) amounts described in Code §104(a)(3), §105(a) and 105(h), but only to the extent these amounts are includible in the gross income of the Employee; (4) amounts paid or reimbursed by the Employer for moving expenses incurred by the Employee, but only to the extent that at the time of the payment it is reasonable to believe that these amounts are not deductible by the Employee under Code §217; (5) the value of a non-qualified stock option granted to an Employee by the Employer, but only to the extent that the value of the option is includible in the gross

## Article 5
## Distribution of Benefits

**5.1** **Distribution of Benefit Upon Retirement.** Unless a mandatory cash-out occurs under Section 5.5, the retirement benefit a Participant is entitled to receive under Section 4.1 or 4.2 will be distributed as follows:

(a) **Normal Form of Distribution in a 401(k) Plan or Profit Sharing Plan.** If the Plan is either a 401(k) Plan or a profit sharing plan, then a Participant's benefit will be distributed in the form that is elected by the Sponsoring Employer in the Adoption Agreement; the permitted Normal Forms of Distribution are (1) a Qualified Joint and Survivor Annuity; (2) a lump sum payment; or (3) Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the Participant; the joint lives of the Participant and a designated Beneficiary; or a period certain not extending beyond the life expectancy of the Participant and a designated Beneficiary. If the Normal Form of Distribution is Substantially Equal installment payments, then the lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments.

(b) **Normal Form of Distribution in a Money Purchase Pension Plan.** If the Plan is a money purchase pension plan, then the Normal Form of Distribution is a Qualified Joint and Survivor Annuity if the Participant has not died before the Annuity Starting Date.

(c) **Optional Forms of Distribution.** If elected by the Sponsoring Employer in the Adoption Agreement, then a Participant may waive the Normal Form of Distribution and elect to have his or her benefit distributed in an Optional Form of Distribution. The permitted Optional Forms of Distribution are (1) a lump sum payment; (2) Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the Participant, the joint lives of the Participant and a designated Beneficiary, or a period certain not extending beyond the life expectancy of the Participant and a designated Beneficiary. If an Optional Form of Distribution is Substantially Equal installment payments, then the lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; (3) a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan; and/or (4) in designated sums from time to time as elected by the Participant. All Optional Forms of Distribution that are elected by the Sponsoring Employer in the Adoption Agreement are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

(d) **Partial Distributions.** If a Participant receives a distribution of less than 100% of his or her Vested Aggregate Account balance, then the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform nondiscriminatory manner.

(e) **Time of Distribution.** Distribution will be made under this Section (1) within a reasonable time after the Participant's actual retirement at Normal Retirement Date (or Early Retirement Date, if applicable), or (2) within a reasonable time after the date that a Participant who elects late retirement under Section 4.2 requests payment as permitted thereunder.

**5.2** **Distribution of Benefit Upon Death.** Unless a mandatory cash-out occurs under Section 5.5, the death benefit a deceased Participant's Beneficiary is entitled to receive under Section 4.3 will be distributed as follows:

(a) **Surviving Spouse.** If a Participant has a surviving Spouse on the date of the Participant's death, then the deceased Participant's surviving Spouse will be entitled to receive a death benefit determined in accordance with the following provisions:

(1) **Normal Form of Distribution Is a Qualified Joint and Survivor Annuity.** If the Normal Form of Distribution elected under Section 5.1 is a Qualified Joint and Survivor Annuity, a Participant dies before the Annuity Starting Date, and the Participant has a surviving Spouse on the date of the Participant's death, then notwithstanding any other Beneficiary designation made by the Participant, the Participant's surviving Spouse will receive a minimum death benefit as a QPSA unless such QPSA has been waived in accordance with the terms of Section 5.8. If the QPSA has been waived, then the benefit (and any additional death benefit to which the surviving Spouse is entitled) will be distributed in the alternate form(s) that are elected by the Sponsoring Employer in the Adoption Agreement. The alternate forms of distribution permitted under the Adoption Agreement are (A) a lump sum payment; (B) Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the surviving Spouse (or beyond the life expectancy of the surviving Spouse). If an alternate form of distribution is Substantially Equal installment payments, then the lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; (C) a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan; and/or (D) in designated sums from time to time as elected by the Beneficiary. All alternate forms of distribution that are elected by the Sponsoring Employer in the Adoption Agreement are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

(2) **Normal Form of Distribution Is Not a Qualified Joint and Survivor Annuity.** If the Normal Form of Distribution elected under Section 5.1 is not a Qualified Joint and Survivor Annuity and the Participant has a surviving Spouse on the date of the Participant's death, then notwithstanding any other Beneficiary designation made by a Participant, the deceased Participant's surviving Spouse will be entitled to receive 100% of the deceased Participant's death benefit unless the surviving Spouse has waived that right in accordance with the terms of Section 5.8. If the Normal Form of Distribution elected under Section 5.1 has been waived, then the benefit will be distributed to the surviving Spouse in the alternate form(s) that are elected by the Sponsoring Employer in the Adoption Agreement. The alternate forms of distribution permitted under the Adoption Agreement are (A) a lump sum payment; (B) Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the surviving Spouse (or beyond the life expectancy of the surviving Spouse). If an alternate form of distribution is Substantially Equal installment payments, then the lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; (C) a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan; and/or (D) in designated sums from time to time as elected by the Beneficiary. All alternate forms of distribution that are elected by the Sponsoring Employer in the Adoption Agreement are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

(3) **Time of Distribution.** Any death benefit payable to a surviving Spouse will be distributed within a reasonable time after the death of the Participant, but not later than December 31st of the calendar year which contains the fifth anniversary of the date of the Participant's death pursuant to Section 5.9(b)(2)(A), if required minimum distributions to the Participant have not begun. However, if the Life Expectancy rule is elected in the Adoption Agreement and the surviving Spouse elects the Life Expectancy rule under Section 5.9(b)(2)(B), then the surviving Spouse may elect to defer distribution of the death benefit, but distribution to the surviving Spouse must begin no later than December 31st of the calendar year in which the deceased Participant would have attained Age 70½.

(4) **Death of Surviving Spouse Before Distribution Begins.** If the surviving Spouse dies before distribution begins, then distribution will be made as if the surviving Spouse were the Participant. If the Normal Form of Distribution that is elected under Section 5.1 is a Qualified Joint and Survivor Annuity and the QPSA has not been waived, or if the Sponsoring Employer elects in the Adoption Agreement to permit a Participant (or, if no election has been made by the Participant prior to the Participant's death, then the Participant's surviving Spouse) to elect the Life Expectancy rule and the Participant (or, if no

election has been made by the Participant prior to the Participant's death, then the Participant's surviving Spouse) elects the Life Expectancy rule, then distribution will be considered to have begun when the deceased Participant would have reached Age 70½ even if payments have been made to the surviving Spouse before that date. Furthermore, if distribution to the surviving Spouse commences in the form of an irrevocable annuity over a period permitted under subparagraph (a)(1) above before the deceased Participant would have reached Age 70½, then distribution will be considered to have begun on the actual annuity commencement date.

(b) **Non-Spouse Beneficiary.** Any death benefit payable to a non-Spouse Beneficiary will be distributed to the Beneficiary in accordance with the following provisions:

  (1) **Form of Distribution.** Any such death benefit will be distributed to the Beneficiary in the form(s) that are elected by the Sponsoring Employer in the Adoption Agreement. The forms of distribution permitted under the Adoption Agreement are (A) a lump sum payment; (B) Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the Beneficiary (or beyond the life expectancy of the Beneficiary). If a form of distribution is Substantially Equal installment payments, then the lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; (C) a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan; and/or (D) in designated sums from time to time as elected by the Beneficiary. All forms of distribution that are elected by the Sponsoring Employer in the Adoption Agreement are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

  (2) **Time of Distribution.** Any death benefit payable to a non-Spouse Beneficiary will be distributed within a reasonable time after the death of the Participant, but not later than December 31st of the calendar year which contains the fifth anniversary of the date of the Participant's death pursuant to Section 5.9(b)(2)(A), if required minimum distributions to the Participant have not begun. However, if the Life Expectancy rule is elected in the Adoption Agreement and the non-Spouse Beneficiary elects the Life Expectancy rule pursuant to Section 5.9(b)(2)(B), then distribution of the death benefit to a non-Spouse Beneficiary must begin no later than December 31st of the calendar year immediately following the calendar year in which the Participant died.

(c) **Distribution If the Participant or Other Payee Is In Pay Status.** If a Participant or Beneficiary who has begun receiving distribution of his or her benefit dies before the entire benefit is distributed, then the balance thereof will be distributed to the Participant's Beneficiary (or Beneficiary's Beneficiary) at least as rapidly as under the method of distribution being used on the date of the Participant's or Beneficiary's death.

(d) **Payments to a Beneficiary of a Beneficiary.** In the absence of a Beneficiary designation or other directive from the deceased Participant to the contrary, any Beneficiary may name his or her own Beneficiary to receive any benefits payable in the event of the Beneficiary's death prior to receiving the entire death benefit to which the Beneficiary is entitled; if a Beneficiary has not named his or her own Beneficiary, then the Beneficiary's estate will be the Beneficiary. If any benefit is payable under this paragraph to a Beneficiary of the deceased Participant's Beneficiary, to the estate of the deceased Participant's Beneficiary, or to any other Beneficiary or the estate thereof, then subject to the limitations regarding the latest dates for benefit payment of this Section and Section 5.9, the Administrator may (1) continue to pay the remaining value of such benefits in the amount and form that has already commenced, (2) pay such benefits in any other manner permitted under the Plan for distribution of benefits upon death, and/or (3) if payments have not already commenced, pay such benefits in any other manner permitted under the Plan for distribution of benefits upon death. Distribution to the Beneficiary of a Beneficiary must begin no later than the date that a distribution would have been made to the Participant's Beneficiary. The Administrator's determination under this paragraph will be final and will be applied in a uniform manner that does not discriminate in favor of Participants who are Highly Compensated Employees.

# Article 12
## Miscellaneous Provisions

**12.1 No Contract of Employment.** Except as otherwise provided by law, neither the establishment of this Plan, any modification hereto, the creation of any fund or account, nor the payment of any benefits, will be construed as giving any Participant or other person any legal or equitable rights against the Employer, any officer or Employee thereof, or the Trustee, except as herein provided. Further, under no circumstances will the terms of employment of any Participant be modified or otherwise affected by this Plan.

**12.2 Title to Assets.** No Participant or Beneficiary will have any right to, or any interest in, any assets of the Trust upon separation from service with the Employer, Affiliated Employer, or Adopting Employer, except as otherwise provided by the terms of the Plan.

**12.3 Qualified Military Service.** Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code §414(u).

**12.4 Domestic Partner's Rights.** If elected in the Adoption Agreement, then a Domestic Partner will be afforded the same rights as a Spouse for purposes of this Plan. However, until such time as ERISA recognizes Federal enforcement rights of a Domestic Partner, enforcement of these rights by a Domestic Partner will be based on a State's (or Commonwealth's) contract law (without the necessity of proving adequate consideration or actual damages under contract law) or other applicable law.

**12.5 Fiduciaries and Bonding.** Fiduciaries (including Named Fiduciaries) of the Plan will have only those powers and duties specifically given to them under the terms of this Plan. Every fiduciary other than a bank, an insurance company, or a fiduciary of an Employer which has no common-law employees, will be bonded in an amount not less than 10% of the amount of funds under the fiduciary's supervision, but the bond will not be less than $1,000 or more than $500,000 or such other amount that may be required by law. The bond will provide protection to the Plan against any loss for acts of fraud or dishonesty by a fiduciary acting alone or in concert with others. The cost of such bond will be an expense of either the Employer or the Trust, at the election of the Sponsoring Employer.

**12.6 Severability of Provisions.** If any Plan provision is held invalid or unenforceable, such invalidity or unenforceability will not affect any other provision of this Plan, and this Plan will be construed and enforced as if such provision had not been included.

**12.7 Interpretation of the Plan and Trust.** The following provisions apply to the interpretation of the Plan and Trust:

(a) **Names.** Names that are used in this Plan should be used consistently in any appendixes, policies, procedures, and/or any other documents which are legally binding upon the Plan. However, in documents that are not considered to be part of this Plan, appendixes, policies or procedures that are not legally binding upon the Plan; and that may be are distributed to individuals (such as the SPDs, SMMs, notices, and election forms), names may use plain English terms. These terms include, but are not limited to, the following: in the case of a profit sharing plan, the Non-Elective Contribution may be called the Employer contribution or the profit sharing contribution. Similarly, the Non-Elective Contribution Account may be called the Participant's Account or the Participant's profit sharing account.

(b) **Gender.** Words that are used in the masculine gender may be construed as though they are also used in the feminine or neuter gender, where applicable (and vice versa).

(c) **Number.** Words that are used in the singular form may be construed as though they are also used in the plural form, where applicable (and vice versa).

(d) **Headings and Subheadings.** Headings and subheadings are inserted for convenience of reference. Headings and subheadings constitute no part of this Plan and/or Trust and are not to be considered in its construction or interpretation.

(e) **Single Subparagraphs.** This Plan and/or Trust may have Sections and/or paragraphs that contain a single subparagraph; such document construction will not constitute a Scrivener's error.

## CERTIFICATION OF MARRIAGE/REGISTERED DOMESTIC PARTNERSHIP

I, _____, certify *(complete A or B or C, as applicable)*:

A.   _____ and I were legally married on _____ / ____ / _____
     [*spouse's name*]                                          [*month/day/year*]

   in _____
      [*name of jurisdiction*]

- OR -

B.   _____ and I established a domestic partnership
     [*domestic partner's name*]

   which was registered with _____ on _____ / ____ / _____
                              [*name of jurisdiction*]        [*month/day/year*]

- OR -

C.   _____ and I established a domestic partnership
     [*domestic partner's name*]

   which was registered with the Firm's internal registry on _____ / ____ / _____
                                                              [*month/day/year*]

   by filing a Declaration of Domestic Partnership with Human Resources.

I understand that any premium payments that I pay for coverage of a domestic partner or same-sex spouse will be after-tax, and contributions by my employer for such coverage will be treated as income to me, unless I submit a *Declaration of Tax Status* certifying that my domestic partner or same-sex spouse qualifies as a tax dependent under Internal Revenue Code section 152.

It is understood that:

   1.   This *Certification of Marriage/Registered Domestic Partnership* shall be terminated upon the death of the employee's spouse or domestic partner or by the dissolution of the marriage or termination of the domestic partnership.

   2.   The undersigned must notify Human Resources if the marriage or the domestic partnership has been terminated, within thirty (30) days of such change.

   I declare, under penalty of perjury under the laws of the State of _____, that the foregoing is true and correct.


_____          _____
Employee's Signature                    Date