

Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321

March 26, 2012

Susan Katz Hoffman
267.402.3015 direct
267.402.3000 main
267.430.7568 fax
shoffman@littler.com

**VIA FACSIMILE AND ELECTRONIC FILING**

The Honorable C. Darnell Jones, II
United States District Court
601 Market St.
Philadelphia, PA 19106

Re: *Cozen O'Connor, P.C. v. Jennifer J. Tobits, David M. Farley, and Joan F. Farley*, No. 2:11-cv-00045

Dear Judge Jones:

The purpose of this letter is to respond to Plaintiff Cozen O'Connor, P.C.'s ("Cozen") letter to the Court dated March 21, 2012, which takes issue with certain provisions of the Charles Schwab 401(k) Non-Standardized Prototype Adoption Agreement and The Charles Schwab Defined Contribution Plan and Trust (the "Schwab Plan"). The provisions of the Schwab Plan were part of our supplemental filing of March 14, 2012, which we submitted in response to the Court's request to see the prototype plan adopted by this law firm, which provides the full panoply of spousal benefits to same-sex spouses and which has received Internal Revenue Service ("IRS") approval as in compliance with the Federal tax qualification laws and regulations.

Cozen's March 21, 2012 letter misconstrues the purpose of our supplemental filing and certain provisions of the Schwab Plan. By way of background, in its filings to date, Cozen contends that the Federal Defense of Marriage Act ("DOMA") *prevents* Cozen from interpreting the term "Spouse," under the Cozen O'Connor Profit Sharing Plan (the "Plan"), to include same-sex spouses. In oral argument before the Court on March 12, 2012 (although not in its prior briefing), Cozen appeared to concede that the same benefits could be provided to same-sex spouses under a tax-qualified retirement plan. However, Cozen also argued that unless the Court advises Cozen that DOMA does not preclude interpreting the Plan's references to "Spouse" as including a same-sex spouse, the Plan's Committee had properly interpreted that term as not including same-sex spouses because it had been advised by its counsel that it could not so interpret that word.

**Purpose of the March 14, 2012 Supplemental Filing**

As noted above, our supplemental filing (the Schwab Plan) was provided, in response to the Court's request, to show that, in fact, the IRS has approved (as in compliance with the Federal tax qualification laws and regulations) retirement plans that provide spousal benefits (including the pre-retirement survivor annuity, the joint and survivor annuity, and the right to consent to a

The Honorable C. Darnell Jones, II
March 26, 2012
Page 2

non-spouse beneficiary, the last of which was referred to as the "right of first refusal" at the March 12, 2012 oral argument) to spouses of the same sex and therefore nothing in Federal law (including DOMA) prevents Cozen from interpreting the Cozen Plan's term "Spouse" to include a same-sex spouse. Under the Schwab Plan, not only can those benefits be provided to same-sex spouses (by checking the option in the Schwab Plan adoption agreement which permits employers to elect to treat "Domestic Partners" as spouses), but also to non-spouse domestic partners. Thus, the Schwab Plan supports the contention that while DOMA requires that ERISA's spousal protections apply to opposite-sex spouses, it just sets a "floor" – employers can draft their plans to provide spousal benefits and protections in addition to those mandated by Federal law. This puts to rest Cozen's argument – that the spousal benefits under the Cozen Plan cannot be provided to same-sex spouses unless DOMA is declared unconstitutional.

**The Schwab Plan Document: Specific Provisions**

As for the specific provisions of the Schwab Plan, Cozen's letter of March 21, 2012 misinterprets the definitions of the terms Domestic Partner and Spouse, the election that the Schwab Plan permits with respect to a Domestic Partner, and Section 12.4. The first sentence of Section 12.4 allows the employer (not the participant, as Cozen contends in its March 21, 2012 letter) to elect to treat Domestic Partners as Spouses, each of which are defined under the Schwab Plan. Once made, the election applies to all of the employer's plan participants and grants all spousal rights to the Domestic Partner of a plan participant.

The Schwab Plan defines Domestic Partner and Spouse as follows:

> **Domestic Partner.** The term "Domestic Partner" means the individual who is recognized to be the domestic partner of the Participant <u>through policies and procedures that are established by the Sponsoring Employer</u> and that may reflect the law of a State or a Commonwealth (or a political subdivision of a State or a Commonwealth).
>
> **Spouse.** The term "Spouse" means the person to whom a Participant is legally married, and, if elected in the Adoption Agreement, the Participant must be married to such person throughout the one year period ending on the earlier of the Annuity Starting Date or the Participant's death in order for the person to be considered the Participant's Spouse. Furthermore, a former Spouse will be treated as the Participant's Spouse or surviving Spouse to the extent provided under a qualified domestic relations order as described in Code § 414(p).

(Emphasis added.) Cozen argues that because Domestic Partner and Spouse are defined terms, that a person cannot be both a same-sex spouse and a Domestic Partner under the Schwab Plan. But these definitions do not address the status of a spouse recognized under state or provincial law but not Federal law. The Schwab Plan's definition of Spouse does not

The Honorable C. Darnell Jones, II
March 26, 2012
Page 3

expressly include or exclude same-sex spouses. And, the Schwab Plan's definition of Domestic Partner is broader than its definition of Spouse, because Domestic Partner can encompass persons not legally married to the participant – the definition is left to the policies and procedures of the sponsoring employer. Thus, it is possible for a same-sex spouse to be included in both definitions. In adopting the Schwab Plan, Littler Mendelson, P.C. has resolved this ambiguity by including same-sex spouses in its definition of Domestic Partner and by electing to treat Domestic Partners as Spouses under its plan (by checking the option in the Schwab Plan adoption agreement which permits employers to elect to treat Domestic Partners as Spouses).

Cozen also argues that if an adopting employer were free to interpret the term Spouse, as defined under the Schwab Plan, to include a same-sex spouse, then employers would not need to separately elect to treat a Domestic Partner, who is a same-sex spouse, as a Spouse. Whether the term Spouse in the Schwab Plan includes a spouse of the same sex directly or only by election of the employer is not the point. The point is that the term Spouse, as used in the Schwab Plan, can include a spouse of the same sex if the employer so elects. Here, we have to note a distinction between the Cozen Plan and the Schwab Plan. The Schwab Plan is a prototype, provided to thousands of employers for use in designing their tax-qualified retirement plans. The Schwab Plan prototype contains all of the legally required provisions for tax qualification (i.e., the Federal floor), but then it allows employers to make certain design decisions or provide additional benefits, which do not violate the Federal tax qualification laws and regulations. One of those decisions was whether to treat Domestic Partners (as defined under the Schwab Plan) as Spouses. That is why the Schwab Plan provided employers with an election to treat Domestic Partners as Spouses and did not expressly include same-sex spouses within its definition of Spouse. By contrast, the Cozen Plan, which was custom-drafted, incorporated all of Cozen's design choices, and did not specify whether the term "Spouse" includes a lawful spouse of the same sex.

Finally, Cozen misinterprets the second sentence of Section 12.4, which provides:

> However, until such time as ERISA recognizes Federal enforcement rights of a Domestic Partner, enforcement of these rights by a Domestic Partner will be based on a State's (or Commonwealth's) contract law (without the necessity of proving adequate consideration or actual damages under contract law) or other applicable law.

This only addresses how an employee's or beneficiary's rights will be enforced against the plan. It does not affect the right of the employer to elect to include Domestic Partners as Spouses under the employer's plan and therefore did not have to be included in the Schwab Plan at all.

The Honorable C. Darnell Jones, II
March 26, 2012
Page 4

### Interpreting the Term "Spouse" Under the Cozen Plan

That leaves the question of whether Cozen, in drafting its Plan, intended the term "Spouse" to include all lawful spouses, whether recognized by Federal law or not (so long as the marriage is valid under the applicable law of a state or province). The Schwab Plan drafters allow an employer to consider that issue when adopting the Schwab Plan, by checking (or not checking) the Domestic Partner option. As we pointed out in oral argument, that is, of course, the preferred approach – for an employer to consider in advance whether the term "spouse" will include same-sex spouses and to clearly define the term in the plan. Cozen did not do so when adopting its Plan, which resulted in the ambiguity being addressed by this Court.

In its final statement to the Court, Cozen invited the Court to remand the decision to the Plan's Committee for a determination of whether the term "Spouse," in the Cozen Plan, includes same-sex spouses, if the Court decides that it is lawful to include same-sex spouses for purposes of the spousal death benefits (and right of first refusal) provided under the Cozen Plan. However, Cozen's letter of March 21, 2012 implies that Cozen believes the determination has already been made. The Court must decide (assuming the Court agrees that the term "spouse" in an employer's plan may lawfully include same-sex spouses) whether to remand the decision to the Plan's Committee as Cozen invited at oral argument (if the Court believes the Plan's Committee can reach a reasoned decision despite Cozen's current position), or to determine the Plan interpretation question in this proceeding without a remand. In either case, the constitutionality of DOMA need not be addressed.

Respectfully submitted,

Littler Mendelson, P.C.

/s/ Susan Katz Hoffman

Susan Katz Hoffman
SKH/me
Enclosures
cc:     Counsel of Record

Firmwide:109977336.1 850000.1732