IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COZEN O'CONNOR, P.C., | ) |
| Plaintiff, | ) |
| v. | ) No. 2:11-cv-00045 |
| JENNIFER J. TOBITS, *et al.*, | ) Judge: C. Darnell Jones, II |
| Defendants, | ) |
| BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF REPRESENTATIVES, | ) |
| Intervenor. | ) |

**RESPONSE OF INTERVENOR THE BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF REPRESENTATIVES TO JENNIFER TOBITS' NOTICE OF SUPPLEMENTAL AUTHORITY**

The House hereby responds to Jennifer Tobits' notice of supplemental authority dated June 4, 2012 (Dkt. No. 125). That notice concerns two cases, *Massachusetts v. U.S. Department of Health and Human Services*, No. 10-2204, *et al.* (1st Cir. May 31, 2012), and *Dragovich v. U.S. Department of Treasury*, No. C 10-01564 (N.D. Cal. May 24, 2012).

*Massachusetts v. HHS*

In *Massachusetts*, the First Circuit declined to apply heightened scrutiny to Section 3 of the Defense of Marriage Act ("DOMA"). The First Circuit explained that creating "a new suspect classification for same-sex relationships would have far-reaching implications — in particular by implying an overruling of *Baker* [*v. Nelson*, 409 U.S. 810 (1972)], which we are neither empowered to do nor willing to predict." *Massachusetts,* slip op. 15. The First Circuit also recognized that making such classifications suspect "could overturn marriage laws in a huge majority of individual states." *Id.* The First Circuit also refused to apply so-called "intermediate

scrutiny." *See id*. at 14 ("[E]xtending intermediate scrutiny to sexual preference classifications is not a step open to us.").

Significantly, the First Circuit recognized that DOMA survives ordinary rational basis review. *See id*. at 14 ("Under such a rational basis standard, the *Gill* plaintiffs cannot prevail."). So did the U.S. Justice Department. *See id*. at 14 ("The federal defendants conceded that rational basis review leaves DOMA intact"); *id*. at 13 ("The federal defendants said that DOMA would survive such rational basis scrutiny"). This Court should apply the rational basis test to DOMA and hold that DOMA passes constitutional muster under that deferential standard of review, as the First Circuit acknowledged and the Justice Department conceded.

The First Circuit, however, did not apply what it called "classic" or "conventional" rational basis review. *Id*. at 16, 18. Instead, it invented a new standard of review that it described as "intensified scrutiny" and "closer than usual scrutiny." *Id*. at 15, 20; *see also id*. at 11 ("closer than usual review"). Under this newly minted form of judicial review, the "deference ordinarily accorded" to an Act of Congress is "diminish[ed]." *Id*. at 20. No Supreme Court (or Second Circuit) precedent recognizes this previously unknown kind of judicial scrutiny, and it would be inappropriate for this Court to duplicate the First Circuit's invention.

The First Circuit correctly recognized that the Supreme Court's decision in *Baker v. Nelson* "is binding precedent." *Id*. at 12. It also correctly recognized that *Baker* rejected "a constitutional right to same-sex marriage." *Id*. Having recognized those things, the First Circuit should have recognized that *Baker* controlled the case, and it erred in failing to do so. *Baker* stands for the proposition that a state may use the traditional definition of marriage without violating equal protection. It necessarily follows that the federal government may do the same.

*Dragovich v. Treasury*

Like the *Massachusetts* court, the *Dragovich* court rejected the plea for "heightened" scrutiny. The *Dragovich* court instead applied the rational basis test. *See Dragovich*, slip op. 19-20. Although the *Dragovich* court erred in finding DOMA unconstitutional under that test, it applied the correct standard of review (or at least purported to do so).

The *Dragovich* court erred in rejecting the House's argument that *Baker v. Nelson* forecloses equal protection claims against DOMA. The *Dragovich* court attempted to distinguish *Baker* on the ground that the *Dragovich* plaintiffs are married while the *Baker* plaintiffs were not. But the fact that the plaintiffs in *Baker* were not married makes *Windsor* an easier case than *Baker*. Unlike the state law at issue in *Baker*, DOMA does not forbid same-sex marriages but only concerns the availability of federal benefits. *See Massachusetts*, slip op. 18 (DOMA "will not prevent same-sex marriages where permitted under state law"); *id.* at 22 ("section 3 governs only federal programs and funding"); *id.* at 22 ("DOMA merely limits the use of federal funds").

The *Dragovich* court said that "animus toward, and moral rejection of, homosexuality and same-sex relationships are apparent in the Congressional record" on DOMA. *Dragovich*, slip op. 21. But the legislative history cited by the court consisted of only three sentences extracted from two pages of the House Judiciary Committee report, including a quotation from one Member of Congress. *Id.* at 9 (citing House Rep. 15-16). The court failed to discuss the extensive legislative history cited by the House revealing wholly legitimate congressional purposes having nothing to do with supposed animus. It was inappropriate for the *Dragovich* court to opine that animus was "apparent in the Congressional record" based on such an incomplete examination of the record as a whole.

In contrast to *Dragovich*, the First Circuit correctly rejected "the charge that DOMA's

3

hidden but dominant purpose was hostility to homosexuality," explaining that "[t]he opponents of section 3 point to selected comments from a few individual legislators; but the motives of a small group cannot taint a statute supported by large majorities in both Houses and signed by President Clinton."  *Massachusetts*, slip op. 29.

                                       Respectfully submitted,

                                       */s/ H. Christopher Bartolomucci*
                                       Paul D. Clement
                                       H. Christopher Bartolomucci
                                       Conor B. Dugan
                                       Nicholas J. Nelson

                                       BANCROFT PLLC
                                       1919 M Street, N.W., Suite 470
                                       Washington, D.C.  20036
                                       202/234-0090 (phone); 202/234-2806 (fax)

                                       *Counsel for Intervenor-Defendant*
                                       *the Bipartisan Legal Advisory Group of the*
                                       *United States House of Representatives*

*Of Counsel:*

Kerry W. Kircher, General Counsel
William Pittard, Deputy General Counsel
Christine Davenport, Senior Assistant Counsel
Todd B. Tatelman, Assistant Counsel
Mary Beth Walker, Assistant Counsel

OFFICE OF GENERAL COUNSEL,
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
202/225-9700 (phone); 202/226-1360 (fax)

Dated:  June 11, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2012, I electronically filed the foregoing Response of Intervenor the Bipartisan Legal Advisory Group of the U.S. House of Representatives to Jennifer Tobits' Notice of Supplemental Authority with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania using the CM/ECF system. I further certify that all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

> */s/ H. Christopher Bartolomucci*
> H. Christopher Bartolomucci