IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COZEN O'CONNOR, P.C., | ) |
| | ) |
| Plaintiff, | ) |
| | )  No. 2:11-cv-00045 |
| v. | ) |
| | )  Judge:  C. Darnell Jones, II |
| JENNIFER J. TOBITS, et al., | ) |
| | ) |
| Defendants. | ) |

**NOTICE OF RECENT LEGAL DEVELOPMENTS
OF THE BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF
REPRESENTATIVES**

Intervenor Bipartisan Legal Advisory Group of the U.S. House of Representatives ("House") respectfully submits this Notice of Recent Legal Developments to advise the Court of the United States Supreme Court's grant of certoriari in *United States v. Windsor*, No. 12-307, – S. Ct. –, 2012 WL 4009654 (Dec. 7, 2012), and to provide the Court with new, relevant authority to supplement its Memorandum Regarding the Constitutionality of DOMA Section 3 (Dec. 2, 2011) (ECF No. 71) ("House Mem.").

**A.    The Supreme Court Will Review the Constitutionality of DOMA Section 3.**

This case concerns the constitutionality of Section 3 of the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, under the equal protection component of the Due Process Clause of the Fifth Amendment.  *See, e.g.*, Tobits's Answer to Cross-Cl. of Defs. David M. . . . and Joan F. Farley at 5 ("Eighth Affirmative Defense") (Aug. 22, 2011) (ECF No. 24); Tobits's Notice of Constitutional Question (Aug. 23, 2011) (ECF. No. 27); Tobits's Suppl. Br. Pursuant to the Ct.'s Oct. 27, 2011 Order at 3 (ECF No. 73) ("Tobits Br.") (DOMA Section 3

"violates both the equal protection and due process guarantees of the Fifth Amendment."). On December 7, 2012, the Supreme Court granted a petition for writ of certiorari to review the Second Circuit's decision in *Windsor v. United States*, 699 F.3d 169 (2d Cir. 2012). The question presented in that case is: "[w]hether Section 3 of DOMA violates the Fifth Amendment's guarantee of equal protection of the laws as applied to persons of the same sex who are legally married under the laws of their State."[1] Pet. For a Writ of Cert. Before J. at *I, *United States v. Windsor*, No. 12-307, 2012 WL 3991414 (Sept. 11, 2012). Like *Windsor*, this action also (potentially) involves a challenge DOMA Section 3 under the equal protection component of the Due Process Clause of the Fifth Amendment. *See, e.g.*, Tobits Br. at 3, 6-33. Accordingly, if the Court determines that a ruling on Section 3's constitutionality is necessary in this case, the Supreme Court's resolution of that issue will have a direct and significant impact on this Court's decision.

Notably, several other courts addressing the constitutionality of DOMA Section 3 already have stayed their proceedings in light of the Supreme Court's consideration of *Windsor*:

- Order at 2, *Golinski v. United States*, Nos. 12-15388 & 12-15409 (9th Cir. Dec. 11, 2012) (ECF No. 156) ("case will continue to be held in abeyance pending the decision of the United States Supreme Court in *United States v. Windsor*, No. 12-307");

---

[1] The Supreme Court also ordered the parties to brief and argue two additional questions: (1) "[w]hether the Executive Branch's agreement with the court below that DOMA is unconstitutional deprives this Court of jurisdiction to decide this case;" and (2) "whether the Bipartisan Legal Advisory Group of the United States House of Representatives has Article III standing in this case." Opinion Granting Cert., *United States v. Windsor*, No. 12-307, – S. Ct. –, 2012 WL 4009654 (Dec. 7, 2012). The Supreme Court has not acted on nine other pending petitions addressing the constitutionality of Section 3 of DOMA.

- Order, *Pedersen v. OPM*, Nos. 12-3273 & 12-3872 (2d Cir. Nov. 28, 2012) (ECF No. 114) (briefing schedule suspending pending consultation with staff attorneys to hold case in abeyance in light of the grant of certiorari in *Windsor*);

- Order, *Dragovich v. U.S. Dep't of the Treasury*, Nos. 12-16461 & 12-16628 (9th Cir. Sept. 21, 2012) (ECF No. 12) (stayed until February 26, 2013, and allowing for additional continuance of the stay);

- Order, *Cardona v. Shinseki*, No. 11-3083 (Ct. App. Vet. Cl. Dec. 18, 2012) (*sua sponte* staying case pending resolution of *Windsor*);

- Judgment, *Massachusetts v. U.S. Dep't of Health & Human Servs.*, Nos. 10-2204, 10-2207, & 10-2214 (1st Cir. May 31, 2012) (ECF No. 5645272) (stayed "pending further order" of that court);

- Electronic Order, *McLaughlin v. Panetta*, No. 1:11-cv-11905 (D. Mass. June 6, 2012) (granting opposed motion to stay until 30 days after First Circuit issues its mandate in *Massachusetts v. U.S. Dep't of Health & Human Servs.*, which has a pending writ of certiorari before the Supreme Court);

- Minute Entry, *Blesch v. Holder*, No. 1:12-cv-01578 (E.D.N.Y. Dec. 18, 2012) (ECF No. 27) (stay continued pending Supreme Court decision in *Windsor*).

**B.      November 2012 Election Results Support the House's Arguments.**

In support of its argument for the application of rational basis review in analyzing the constitutionality of DOMA Section 3, the House asserted that supporters of same-sex marriage have ample and increasing clout in government and in the press, resulting in an active, public debate about same-sex marriage in America.  *See* House Mem. at 21-30; Resp. Mem. of the [House] Regarding the Constitutionality of DOMA Section 3 at 22-23 (Dec. 21, 2011) (ECF No.

89); Resp. of the [House] to the [Executive Branch Br.] Regarding the Constitutionality of DOMA Section 3 at 8-9 (Jan. 17, 2012) (ECF No. 104).  As a result of that increasing political power, the issue of same-sex marriage is being decided by voters, and that democratic process should be allowed to continue.  *See* House Mem. at 57.

The November 2012 election results illuminate this issue and support the House's argument that heightened scrutiny should not apply here.  In those elections, four ballot measures addressed the issue of same-sex marriage and, in each instance, the proponents of same-sex marriage prevailed.

- Maine voters passed a referendum, allowing the State of Maine to issue marriage licenses to same-sex couples;[2]

- Washington voters approved a referendum permitting marriage for same-sex couples;[3]

- Maryland voters approved a referendum petition approving Maryland's civil marriage law that allowed gay and lesbian couples to obtain a civil marriage license;[4] and

- Minnesota voters rejected a ballot measure that would have amended the state

---

[2]  Tabulation of Votes, Me. Dep't of the Sec'y of State, *available at* http://www.maine.gov/sos/cec/elec/2012/refstate1112.xls at Question 1; *see also Democracy and Gay Marriage*, Wall St. J., Nov. 9, 2012, at A12, *available at* http://online.wsj.com/article/SB10001424127887323894704578104953714796998.html ("Whatever one's views [of same-sex marriage], the process is itself a victory.  A contentious issue is working its way through the political system and being resolved in a manner that both sides can accept as legitimate.  This ought to give pause to judges who want to legislate a premature social consensus from the bench . . . .").

[3]  November 6, 2012 General Election Results, Wash. Sec'y of State, a*vailable at* http://vote.wa.gov/results/current/export/20121106_Measures_20121205_1451.csv at Referendum Measure No. 74.

[4]  Official 2012 Presidential General Election results for All State Questions, Md. State Bd. of Elections, *available at* http://elections.state.md.us/elections/2012/results/general/gen_qresults_2012_4_00_1.html at Question 6.

4

constitution to provide that only marriage between a man and a woman shall be valid or recognized.[5]

**C.**     *Sevick v. Sandoval.*

In its Memorandum in Support of the Constitutionality of DOMA Section 3, the House has argued, *inter alia*, that (1) the Court should review the law's constitutionality under a rational basis standard rather than heightened scrutiny; and (2) DOMA Section 3 satisfies rational basis review. The recent U.S. District Court for Nevada ruling in *Sevcik v. Sandoval* supports the House's position. No. 2:12-cv-00578, 2012 WL 5989662 (D. Nev. Nov. 26, 2012), *appeal pending* No. 12-17668 (9th Cir.), *pet. for a writ of cert. before j. pending sub nom. Coal. for the Protection of Marriage v. Sevcik*, No. 12-689, 2012 WL 6054793 (Dec. 5, 2012).

In *Sevcik*, same-sex Nevada couples seeking the right to marry or have their existing marriage certificates recognized by the state argued that the Equal Protection Clause of the Fourteenth Amendment prohibits Nevada from maintaining laws and a constitutional amendment that reserve the institution of marriage to opposite sex relationships. *See id.* at *1, 4. Like Ms. Tobits and the Executive Branch here, the *Sevcik* plaintiffs argued that same-sex marriage laws should be subject to review under heightened scrutiny analysis. *See id.* at *7-16. On November 26, 2012, U.S. District Judge Robert C. Jones rejected this precise argument and dismissed plaintiffs' complaint, holding, *inter alia,* that (1) Nevada law and its constitutional amendment recognizing marriage as between opposite sex couples are subject to rational basis review rather than heightened scrutiny, and (2) Nevada had a rational basis for maintaining a distinction between domestic partnerships and marriage. *See id.* at *9-19. The court first held that the

---

[5] Results for Constitutional Amendments, Office of the Minn. Sec'y of State, *available at* http://electionresults.sos.state.mn.us/ENR/Results/AmendmentResultsStatewide/1 at Constitutional Amendment 1.

Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972), summarily dismissing an equal protection challenge to Minnesota's marriage laws, precluded any claim that same-sex couples have a right to marry under the Fourteenth Amendment's Equal Protection Clause. *See Sevcik*, 2012 WL 5989662 at *5-7. Notwithstanding its conclusion that *Baker* precluded most of plaintiffs' challenge to Nevada's law and amendment, the court went on to conduct a full equal protection analysis to determine the level of scrutiny applicable to constitutional review of Nevada's same sex marriage law. *See id.* at *7-16. In determining whether heightened scrutiny should apply, the court found that precedent requires rational basis scrutiny for sexual-orientation based distinctions. *Id.* at *9-11. Additionally, the court held that (i) while gays and lesbians have suffered a history of discrimination, public acceptance and legal protection from discrimination has increased substantially since the 1990's, and thus this factor weighted less heavily towards heightened scrutiny, *id.* at 11-15; (ii) gays and lesbians do not lack political power, *id.* at *11; and (iii) application of a heightened scrutiny analysis would inappropriately remove a public issue from the democratic process, *id.* at *14-15. Finally, applying rational basis review, the court held that preserving the traditional institution of marriage and the state's interests in traditional procreation were state interests adequate to sustain the Nevada law and amendment against constitutional attack. *Id.* at *16-19 (noting that the Supreme Court, in *Lawrence v. Texas*, 539 U.S. 558 (2003), "strongly implied that . . . the preservation of the traditional institution of marriage should be considered a legitimate state interest rationally related to prohibiting same-sex marriage").

## CONCLUSION

The Court should maintain this case on the civil suspense docket. Prudence and judicial economy suggest that it stay its hand in favor of the pending Supreme Court proceedings that

likely will control the outcome of this case.  Should the court be inclined to rule on the pending motions, however, recent developments only make clearer the constitutionality of Section 3 of the Defense of Marriage Act.

          Respectfully submitted,

          Paul D. Clement
          */s/ H. Christopher Bartolomucci*
          H. Christopher Bartolomucci[6]
          Nicholas J. Nelson
          BANCROFT PLLC
          1919 M Street, N.W.
          Suite 470
          Washington, D.C.  20036
          202/234-0090 (phone)
          202/234-2806 (fax)
          *Counsel for Intervenor the Bipartisan Legal Advisory Group of the U.S. House of Representatives*[7]

Of Counsel:
Kerry W. Kircher, General Counsel
William Pittard, Deputy General Counsel
Christine Davenport, Senior Assistant Counsel
Todd B. Tatelman, Assistant Counsel
Mary Beth Walker, Assistant Counsel
Eleni M. Roumel, Assistant Counsel
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
202/225-9700 (phone)
202/226-1360 (fax)

January 4, 2013

---

[6] Kerry W. Kircher, as ECF filer of this document, attests that concurrence in the filing of the document has been obtained from signatory H. Christopher Bartolomucci.

[7] The Bipartisan Legal Advisory Group, which speaks for the House in litigation matters, currently is comprised of the Honorable John A. Boehner, Speaker of the House, the Honorable Eric Cantor, Majority Leader, the Honorable Kevin McCarthy, Majority Whip, the Honorable Nancy Pelosi, Democratic Leader, and the Honorable Steny H. Hoyer, Democratic Whip.  The Democratic Leader and the Democratic Whip have declined to support the position taken by the Group on the merits of DOMA Section 3's constitutionality in this case.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2013, I electronically filed the foregoing Notice of Recent Legal Developments of the Bipartisan Legal Advisory Group of the U.S. House of Representatives with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania using the CM/ECF system.  I further certify that all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Kerry W. Kircher*
Kerry W. Kircher