IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| COZEN O'CONNOR, P.C., | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | NO. 11-0045 |
| v. | : | |
| JENNIFER J. TOBITS, et al. | : | |
| Defendants. | : | |

## MEMORANDUM

Jones, II, J.                                                                                                           July 29, 2013

The narrow issue presented in this case is whether the United States Supreme Court's decision in *United States v. Windsor*[1], declaring Section 3 of the Defense of Marriage Act unconstitutional as a deprivation of the equal liberty of persons that is protected by the Fifth Amendment, requires recognition of a valid Canadian same-sex marriage for purposes of benefits distribution pursuant to ERISA, a federal statute.[2]

### I.    FACTUAL BACKGROUND

Sarah Ellyn Farley began working at the Cozen O'Connor law firm in 2004, and subsequently became eligible to participate in the Firm's Profit Sharing Plan (the "Plan").[3] In February of 2006, Ms. Farley married Jean Tobits in Toronto, Canada, as authorized under Canadian law. Shortly after her wedding, Ms. Farley was diagnosed with cancer and unfortunately later passed away on September 13, 2010.

---

[1] *United States v. Windsor*, 570 U.S. ___ , 133 S. Ct. 2675 (2013).

[2] ERISA is codified as 29 U.S.C. §§ 1001-1461.

[3] *See* Cozen O'Connor Profit Sharing Plan (the "Plan") (Dkt. No. 3-5).

Cozen O'Connor's Plan requires that, upon the death of a Participant to the Plan, the Plan Administrator must pay death benefits in the form of a qualified Pre-Retirement Survivor Annuity in accordance with ERISA and the Internal Revenue Code (the "Code").[4] The question herein is: Who should receive payment of the death benefits?[5] Both Jean Tobits and Ms. Farley's parents (David and Joan, hereinafter "the Farleys") requested payment of the Pre-Retirement Survivor Annuity after Ms. Farley's death.[6] In response to these competing claims,

---

[4] *See* Plan §§ 6.2 (a),(e),(f).

[5] The Plan language requires that death benefits will be paid to the Participant's "surviving Spouse" upon the death of the Participant. *See id.* The Participant may also designate a Beneficiary other than his or her Spouse to receive the death benefits; however, if the Participant has a Spouse, the Spouse must first waive his or her rights to be the Participant's Beneficiary before the designation of another Beneficiary can be deemed valid. *Id.* In the event there is no valid Beneficiary—Spouse or otherwise—the Plan's default provisions require that the death benefits are paid in the following order of priority: first to the Participant's surviving Spouse, and then to the Participant's surviving parents.

Because there is no debate that Ms. Tobits did not waive her right to be Ms. Farley's Beneficiary, a determination of whether Ms. Tobits is Ms. Farley's "surviving Spouse" pursuant to the Plan is dispositive of the distribution of death benefits. If Ms. Tobits is not Ms. Farley's "surviving Spouse," because she is not listed as Ms. Farley's Beneficiary, she has no rights to the death benefits under the Plan. If Ms. Farley is Ms. Tobits' Surviving Spouse, she is entitled to receive payment of the death benefits—the Pre-Retirement Survivor Annuity—via the Plan's priority order of payment. *Id.* §6.2 (f).

The Court notes that the Farleys submitted to Cozen a notarized Designation of Beneficiary Form dated September 12, 2010—the day before Ms. Farley's death—which lists the Farleys as "Primary Beneficiaries". The authenticity of this Form remains disputed. As discussed above, a Designation of Beneficiary Form is valid only if the Spouse—if there is a Spouse—has waived the Pre-Retirement Survivor Annuity by signing that same Designation of Beneficiary Form. There is no question that Ms. Tobits did not sign the Designation of Beneficiary Form, which would thereby waive her right to the death benefits. Thus the Court need not make a determination regarding the authenticity of the Designation, as a determination regarding whether Ms. Tobits is Ms. Farley's "surviving Spouse" could render the issue moot.

[6] The Farleys, through their lawyer Jonathan W. Michael, first advised Cozen O'Connor that they believed they were owed Ms. Farley's death benefits in a letter to Cozen's Administrative Managing Partner, Vincent R. McGuinness, dated November 11, 2010. (Dkt. No. 3-2).

Ms. Tobits first advised Cozen O'Connor that she intended to file a claim with respect to Ms. Farley's death benefits in a letter to Cozen O'Connor's counsel, H. Robert Feibach, dated November 30, 2010. (Dkt. No. 3-3).

As to the Interpleader Action, there is no dispute that Cozen faced multiple competing claims under the Plan.

pursuant to Fed. R. Civ. P. 22, Cozen O'Connor filed an interpleader action in this Court in January, 2011 naming Ms. Tobits and the Farleys as Defendants.[7]

After significant motion practice between the original parties, the Court granted leave to intervene to the United States of America and the Bipartisan Legal Advisory Group ("BLAG") of the U.S. House of Representatives, given the looming Constitutional issues in this matter.[8] This Court subsequently invited all interested parties to submit supplemental briefing on the outstanding Constitutional questions, and thereafter heard Oral Argument on pending motions.[9] Given the likelihood of the United States Supreme Court issuing a ruling on the Constitutionality of DOMA Section 3 in its then-upcoming term, this Court placed the above matter on the Suspense Docket pending the outcome of those cases.[10] On June 26, 2013, the United States Supreme Court rendered its decision in *United States v. Windsor*. On July 8, 2013, BLAG filed an Unopposed Motion to Withdraw, which this Court granted.[11]

---

[7] *See* Cozen O'Connor's First Amended Complaint for Interpleader (Dkt. No. 3).

[8] The Court also granted the motions of multiple parties to appear as *amicus curiae*. These parties included: Concerned Women for America, Frederick Douglass Foundation, Parents and Friends of Ex-Gays & Gays ("PFOX"), The Human Rights Campaign, Equality Forum, Professor Robert P. George, Sherif Girgis, Ryan T. Anderson, and Gage Raley.

[9] The parties' briefs and oral arguments were well-prepared and of great assistance to the Court. The parties are commended in this regard.

[10] *See* Dkt. No. 137.

[11] In its Motion, BLAG—which also argued for the constitutionality of DOMA Section 3 in *Windsor*—stated:

> The Supreme Court recently resolved the issue of DOMA Section 3's constitutionality. *See United States v. Windsor*, 570 U.S. __ (2013), 2013 WL 3196928 (U.S. June 26, 2013). Accordingly, the House no longer has a role to play in this litigation and now seeks to withdraw as a party defendant.

*Id.*

At the heart of this matter is whether Jean Tobits is Ms. Farley's "Spouse" pursuant to the Plan language. This court answers the question in the affirmative. As such, this finding is dispositive of issues that remain in this case.[12]

## II. LEGAL STANDARD

### A. Interpleader

Cozen O'Connor brought this action in interpleader pursuant to Federal Rule of Civil Procedure 22, requesting that: 1) Tobits and the Farleys be required to interplead and settle among themselves their respective claims to the money due under the Plan; 2) Tobits and the Farleys be restrained from commencing any action against Cozen O'Connor on the Plan; 3) Cozen O'Connor be permitted to pay into the registry of the court all amounts due under the Plan and upon such deposit be discharged from all liability arising from the Plan; and 4) that Cozen O'Connor be awarded its costs and attorneys' fees.

Interpleader "allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro. Life Ins. Co. v. Price,* 501 F.3d 271, 275 (3d Cir.2007) (citations omitted). "The plaintiff in an interpleader action is a stakeholder that admits it is liable to one of the claimants, but fears the prospect of multiple liability." *Id.* A party seeking the

---

[12] Currently before this Court are Cozen O'Connor's First Amended Complaint for Interpleader, dated January 24, 2011 (Dkt. No. 3); Defendant Farleys' Answer, Counterclaim, and Crossclaim, dated August 1, 2011 (Dkt. No. 14); Defendant Tobits' Answer, Affirmative Defenses, Counterclaim and Cross-Claims To Interpleader First Amended Complaint, dated August 1, 2011 (Dkt. No. 15); Defendant Farleys' Motion To Dismiss Jennifer J. Tobits' Crossclaims Pursuant to FRCP12 (b)(6), dated August 22, 2011 (Dkt. No. 25); Plaintiff Cozen O'Connor's Motion for Judgment on the Pleadings Pursuant to Rule 12(c), dated September 8, 2011, (Dkt. No. 31); Cross-Claimant Tobits' Motion for Judgment on the Pleadings as to the Farleys' Cross-Claim and Counterclaim For ERISA Relief, dated September 13, 2011, (Dkt. No. 36), and the various responses thereto.

For the reasons that follow, Cozen O'Connor's Motion for Interpleader is Granted in Part and Denied in Part. Tobits' Motion for Judgment on the Pleadings is Granted. The Farleys' Motion to Dismiss is Denied. All other pending Motions are Denied as Moot.

remedy of interpleader under FRCP 22 "may file suit, deposit the property with the court and then withdraw from the proceedings, leaving the competing claimants to litigate between themselves." *Allstate Settlement Corp. v. United States,* 2008 WL 2221897, at *3 (E.D.Pa. May 28, 2008).

## B. Judgment on the Pleadings

A party may move for judgment "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). In so doing, "the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law." *S.B. v. United of Omaha Life Ins. Co.*, Civ. No. 13-1463, 2013 WL 2915973, at *3 (E.D. Pa. June 13, 2013) (citing *Bayer Chemicals Corp. v. Albermarle Corp.,* 171 Fed. App'x 392, 397 (3d Cir. 2006); *Jablonski v. Pan Amer. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir. 1988)). "In evaluating a Rule 12(c) motion, a court must view the pleadings in the light most favorable to, and draw all inferences in favor of, the nonmoving party." *Jablonski,* 863 F.2d at 290. The court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*

In considering a motion for judgment on the pleadings, a court is not limited to the pleadings themselves but may also consider facts of which the court may take judicial notice. *See Schott v. Doe*, CIVA 05-1730, 2007 WL 539645 (W.D. Pa. Feb. 15, 2007) (citing *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir.2000)).

Before this Court are both Cozen O'Connor's and Ms. Tobits' Motions for Judgment on the Pleadings. In addition to the Motions and the responses thereto, this Court considers a number of documents that are incorporated by reference in the Complaints and various pleadings, as well as judicially noticed facts. *See Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892 (D.

5

Del. 1991) (noting that "the consideration of the judicially noticed facts does not convert the motion into a Rule 56 motion for summary judgment.").

In its Motion for Judgment on the Pleadings, Cozen requests judgment as to its interpleader claim, in addition to judgment as to Tobits' and the Farleys' Counterclaims. Ms. Tobits, likewise requests, *inter alia*, "judgment as a matter of law that she is Ms. Farley's surviving spouse and is therefore entitled to the Plan benefits."

## III. DISCUSSION

### A. The Plan Terms

Because the competing claims to Ms. Farley's death benefits require interpretation of the Plan, several key Plan provisions are discussed herein.

The Plan provides in relevant part:

ARTICLE I
DEFINITIONS
\* \* \*

1.55A "Spouse" means the person to whom the Participant has been married throughout the one-year period ending on the earlier of (1) the Participant's annuity starting date or (2) the date of the Participant's death. The Plan Administrator may rely on the Participant's written statement regarding such Participant's marital status.

\* \* \*
ARTICLE VI
DETERMINATION AND DISTRIBUTION OF BENEFITS
\* \* \*
6.2 DETERMINATION OF BENEFITS UPON DEATH

(a) Upon the death of a Participant before the Participant's Retirement Date or other termination of employment, all amounts credited to such Participant's Combined Account shall become fully Vested. The Administrator shall direct the Trustee, in accordance with the provisions of Sections 6.6 and 6.7, to distribute the value of the deceased Participant's accounts to the Participant's Beneficiary

\* \* \*

(e) Unless otherwise elected in the manner prescribed in Section 6.6, the Participant's surviving Spouse shall receive a death benefit equal to the Pre-Retirement Survivor Annuity. The Participant may designate a Beneficiary other than the Spouse to receive that portion of the

Participant's death benefit which is not payable as a Pre-Retirement Survivor Annuity. The Participant may also designate a Beneficiary other than the Participant's Spouse to receive the Pre-Retirement Survivor Annuity but only if:

> (1) the Participant and the Participant's Spouse have validly waived the Pre-Retirement Survivor Annuity in the manner prescribed in Section 6.6, and the Spouse has waived the right to be the Participant's Beneficiary, or

* * *

> (3) the Participant has no Spouse, or

***

In such event, the designation of a Beneficiary shall be made on a form satisfactory to the Administrator . . .

(f) In the event no valid designation of Beneficiary exists, or if the Beneficiary is not alive at the time of the Participant's death, the death benefit will be paid in the following order of priority to:

> (1) the Participant's surviving Spouse;

***

> (2) the Participant's surviving parents, in equal shares

***

ARTICLE IX
MISCELLANEOUS

***

9.3 CONSTRUCTION OF PLAN

This Plan shall be construed and enforced according to the [Internal Revenue] Code, [ERISA] and the laws of the Commonwealth of Pennsylvania, other than its laws respecting choice of law, to the extent not pre-empted by [ERISA].

The Plan (Dkt. No. 3-4 at 1-86).

## B. Applicability of ERISA to the Plan

The Code[13] and ERISA mandate that employee benefit plans meet several requirements to be "qualified" for tax preferences.[14] Among these mandates is the requirement that employee

---

[13] The Code is codified as Title 26 of the U.S. Code.

[14] ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1).

benefit plans contain certain mandatory spousal benefits provisions.[15] Cozen O'Connor has represented to the Court that the Plan is an ERISA-qualified Plan, such that it was drafted to comply with federal law and to enjoy those benefits that accompany an ERISA-qualified plan.[16] Indeed, the Plan contains several hallmarks of an ERISA-qualified plan including those provisions that relate to the distribution of death benefits such as: the Plan's requirement that in order to qualify as "Spouse," the individual must be married to the Participant for at least one year;[17] the Plan's requirement that a "Spouse" must waive his or her right to be the Participant's Beneficiary in writing;[18] and the Plan's requirement that death benefits shall go to the "surviving Spouse," absent a spousal waiver.[19] Not only does it contain language that mirrors the mandates of ERISA and the Code, the Plan expressly requires that the Plan is to be construed according to ERISA and the Code.[20] That is, ERISA and the Code shall supply meanings to the Plan not otherwise found therein, and the Administrator is bound by those terms in making any determination regarding benefits.[21]

---

[15] ERISA and the Code merely establish a floor for privately sponsored employee benefit plans with respect to spousal benefits. Privately-sponsored plans have discretion to go beyond these requirements—indeed many do. Today's holding makes clear, however, that *Windsor* leveled the floor.

[16] *See* Dkt. No. 90 at 4 ("Ms. Farley's death benefit, which is at issue in this case, although payable by a private employer, is absolutely federally mandated under ERISA and under the Internal Revenue Code. The Plan follows this federal law mandate . . . ."); *see also,* Mar. 20, 2013 Tr. at 62:12-16;63:20-64:10 ("The Cozen plan is an ERISA-qualified plan. What that means Your Honor, is in order to get the tax benefits and the other benefits of the plan, it has to follow ERISA. If it does not, if we do not comply with federal law, there are terrible tax consequences that follow both from the participants and to Cozen O'Connor. . . . So Your Honor, we then look at ERISA because our plan was drafted to comply with federal law. . . . and the definitions are there in order to comport with federal law.").

[17] 29 U.S.C. Sec. 1055(b)(4); Plan §1.55A.

[18] 29 U.S.C. § 1055(c)(2); Plan §§ 6.2 (e),(f).

[19] 29 U.S.C. § 1055(b); Plan §§ 6.2 (e),(f).

[20] Plan §9.3.

[21] *See id; see also Kennedy v. Plan Admr for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (U.S. 2009). In *Kennedy*, the United States Supreme Court held that the determination of the proper beneficiary under an ERISA-governed plan will be determined by the language of the plan itself. The *Kennedy* Court noted that "ERISA makes clear that plan administrators must pay benefits "in accordance with the documents

Here, the definition of "Spouse" is undefined, except to the extent that it requires that anyone who is a "Spouse" must be married for a year prior to receiving benefits.[22] This requirement—which tracks the ERISA mandates regarding spousal benefits—still leaves open the question of exactly *who* can be a "Spouse." Based on the language of the Plan—which Cozen drafted pursuant to ERISA's mandates—the Court must look to ERISA and then the Code for those definitions.[23]

By reason of the operative language of the Plan, the determination of whether Ms. Tobits is Ms. Farley's "Spouse" is dispositive of the distribution of death benefits.

### C. *Windsor* and the Definition of "Spouse"

The Dictionary Act codifies rules of statutory construction for thousands of laws and federal regulations, including ERISA and the Code.[24] Section 3 of the federal Defense of Marriage Act ("DOMA") amended the Dictionary Act, and provided that:

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife."

1 U.S.C. § 7.

---

and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Thus, the administrators of this Plan are required to make their benefits determination(s) according to the Code and ERISA, as the Plan language requires.

[22] Plan §1.55A.

[23] Cozen O'Connor, a private employer, did not have to create an employee benefit plan. The Firm's choice to create a tax-qualified employee benefit plan "to be construed and enforced" under ERISA, subjects the Firm's Plan to federal law.

[24] *See* 1 U.S.C. § 1, et seq.

Thus, for purposes of ERISA, the Code and thousands of other regulations, DOMA, by operation of its Section 3, restricted any reference to "Spouse" to mean *only* opposite-sex spouses.[25]

In *United States v. Windsor*, the United States Supreme Court considered whether Edith Windsor, a New York resident who married her late-wife, Thea Spyer in 2006 in Canada, qualified for a federal estate tax exemption as a "surviving spouse," in light of Section 3 of DOMA. The *Windsor* Court held that because the state of New York recognized same-sex marriages as valid—and, to wit, the Canadian marriage of Edith Windsor and Thea Spyer—DOMA unlawfully deprived those couples of the equal liberty of persons that is protected by the Fifth Amendment. As it stood, DOMA, "wr[ote] inequality into the entire United States Code."[26]

That "written inequality" in DOMA Section 3 extended to the ERISA definition of "Spouse." Prior to the Court's decision in *Windsor*, under the plain language of ERISA, the Code, and the Plan at issue in this case, qualified retirement plans were under no obligation to provide benefits to same-sex Spouses. Following the Court's ruling, the term "Spouse" is no longer unconstitutionally restricted to members of the opposite sex, but now rightfully includes those same-sex spouses in "otherwise valid marriages."

**D. Ms. Tobits is Ms. Farley's "Spouse"**

There can be no doubt that Ms. Tobits is Ms. Farley's "surviving Spouse" under the Plan in light of the Supreme Court's decision in *Windsor*. Ms. Tobits and Ms. Farley were married in

---

[25] *See Windsor,* 133 S. Ct. at 2683 ("[DOMA's] comprehensive definition of marriage for purposes of all federal statutes and other regulations or directives covered by its terms, however, does control over 1,000 federal laws in which marital or spousal status is addressed as a matter of federal law.") (citing GAO, D. Shah, Defense of Marriage Act: Update to Prior Report 1 (GAO–04–353R, 2004)).

[26] *Id.* at 2681.

Toronto, Canada in 2006, just a year before Edith Windsor and Thea Spyer wed in Ontario. Ms. Tobits possesses uncontroverted evidence of a valid Canadian Marriage Certificate solemnizing that marriage.[27] Ms. Tobits and Ms. Farley celebrated that marriage with another ceremony in Illinois, where the couple lived together until Ms. Farley's untimely death in 2010.[28] Post-*Windsor*, where a state recognizes a party as a "Surviving Spouse," the federal government must do the same with respect to ERISA benefits—at least pursuant to the express language of the ERISA-qualified Plan at issue here. There can be no doubt that Illinois, the couple's place of domicile, would consider Ms. Tobits Ms. Farley's "surviving Spouse"—indeed it already has made that specific finding under state law.[29] *Windsor* makes clear that where a state has

---

[27] *See* Dkt. No. 3-4.

[28] The Court need not decide any issues of Pennsylvania state law in this matter, including that of the constitutionality of Pennsylvania's state DOMA statute. Although the Plan contains a choice of law provision that makes reference to Pennsylvania law, by the Plan's terms, Pennsylvania law is only applicable to the extent it is not pre-empted by ERISA. Here, the Court finds that, based on the terms of this Plan, ERISA pre-empts Pennsylvania law entirely.

That this Plan belongs to a company headquartered in Pennsylvania matters not. The issue here regards the definition of "Spouse" as supplied by ERISA—a federal regulation. For the purposes of determining the definition of "Spouse," if Courts were required to look at the state in which the policy was drafted, this could permit Plan administrators and drafters to forum shop among those jurisdictions with state DOMA statutes, in an effort to avoid providing benefits to same-sex couples with otherwise valid marriages. At its heart, ERISA was enacted to establish national uniformity among benefit plans. 120 CONG. REC. 29,197 (1974) ("With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation."); *see also Aetna Health Inc. v. Davila,* 542 U.S. 200, 208, (2004). Today's decision is consistent with that goal.

[29] Illinois, like many states, does not issue marriage licenses to same-sex couples. By virtue of its civil union statute, however, Illinois can recognize same-sex marriages solemnized in other jurisdictions, such as Canada. *See* 750 Ill. Comp. Stat. Ann. 75/1 *et seq.* (West 2011); *see also* 750 Ill. Comp. Stat. Ann. 75/5 (describing purpose of Illinois Religious Freedom Protection and Civil Union Act as "provid[ing] persons entering into a civil union with the obligations, responsibilities, protections, and benefits afforded or recognized by the law of Illinois to spouses".)

An Order from the Circuit Court for Cook County, Illinois, dated October 21, 2011, declared Ms. Tobits a party to a civil union with Ms. Farley and declared her Ms. Farley's sole heir. *See* Dkt No. 57, Circuit Court of Cook, County, Ill. Department - Probate Division Order Declaring Heirship. Furthermore, that court granted Ms. Tobits' request to become administrator, authorizing her to take possession of and collect the estate of the decedent and to do all acts required by law. Indeed, because the Illinois probate Court recognized Ms. Tobits as the sole heir to a civil union, it accepted as valid the marriage between Ms. Tobits and Ms. Farley that took place in Canada in 2006. This Court takes judicial

recognized a marriage as valid, the United States Constitution requires that the federal laws and regulations of this country acknowledge that marriage. In light of that, this Court finds that Ms. Tobits is Ms. Farley's "Spouse" pursuant to the terms of the Plan. This finding alone is dispositive of the issue of the proper recipient of Ms. Farley's death benefits.

IV.     CONCLUSION

For the foregoing reasons, judgment shall be entered for Jennifer Tobits. The proceeds of the Plan, which shall be paid into the Registry of the Court pursuant to the accompanying Order, shall be paid in full to Jennifer Tobits. Plaintiff Cozen O'Connor is entitled to discharge of future liability to Defendants concerning the distribution of the Plan's death benefits.

An appropriate Order follows.

---

notice of these decisions as bearing a direct relation to matters at issue before this Court. *See Golden v. Cook,* 293 F. Supp. 2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies . . . and publicly available records and transcripts from judicial proceedings in related or underlying cases which have a direct relation to the matters at issue. "). As this Canadian marriage was deemed valid, albeit under the nominal title of "civil union" in Illinois, there can be no dispute that Ms. Tobits is a "surviving Spouse" pursuant to the Plan.